FEDERAL DEPOSIT INSURANCE
CORPORATION, Plaintiff,
Appellant,

v.

BRACERO & RIVERA, INC.,
Defendant, Appellee.

No. 89–1287.

United States Court of Appeals,
First Circuit.

Heard Nov. 2, 1989.

Decided Feb. 7, 1990.

John David Ferrer, Burke, Va., with whom Rae Schupack Nathan, Regional Counsel, Gabriel Hernandez Rivera and Feldstein, Gelpi, Hernandez & Gotay, Old San Juan, P.R., were on brief for plaintiff, appellant.

David W. Roman, San Juan, P.R., with whom Jose E. Rivera Reyes, Hato Rey, P.R., was on brief for defendant, appellee.

* Of the District of Puerto Rico, sitting by designa-

Before CAMPBELL, Chief Judge, COFFIN, Senior Circuit Judge, and FUSTE,* District Judge.

LEVIN H. CAMPBELL, Chief Judge.

The Federal Deposit Insurance Corporation, acting in its corporate capacity ("FDIC" or "FDIC–Corporate"), brought this action against Bracero & Rivera, Inc. ("Bracero") seeking to collect on a promissory note issued by Bracero and to foreclose on the mortgage securing the note. The district court entered judgment for Bracero. 694 F.Supp. 1027 (D.P.R.1988). FDIC appeals. The issue on appeal is whether the district court erred in holding that Bracero's liability on the mortgage note was discharged before the note was obtained by FDIC, when another debtor, the Development and Investment Corporation, assumed and paid Bracero's debt underlying the mortgage note and the original creditor, the Girod Trust Company, cancelled the debt. We affirm.

### Facts

The mortgage note involved in this action arose out of transactions related to the construction of a housing project in Arecibo, Puerto Rico, known as "Las Brisas." On December 14, 1981, Bracero purchased the property for Las Brisas. The same day, Bracero entered into a loan and pledge agreement with the Girod Trust Company ("Girod"), under which Girod loaned Bracero $950,000 for the construction project. In exchange, Bracero executed and delivered to Girod a promissory note, payable to the bearer on demand, for the amount of the loan plus 15% yearly interest. The note was secured by a registered mortgage executed by Bracero on the housing project property. In March, 1983, Bracero increased the mortgage note to $2 million and executed and registered a deed to this effect.

On April 13, 1984, Bracero sold the housing project property to Development and Investment Corporation ("Development") for approximately $1.3 million, which was the amount then outstanding on Bracero's

tion.

debt to Girod. Under the terms of the purchase deed, Development did not directly pay Bracero, but instead agreed to pay off Bracero's remaining $1.3 million debt to Girod. Neither the purchase deed nor the transfer of the property was ever recorded in the Puerto Rico Property Registry and Bracero remains the owner of record of the housing project property. However, Bracero contends that it has no rights or interest in the property and the district court found that Bracero has no control over the property.

On May 18, 1984, Girod extended to Development a $1.65 million line of credit to complete construction of the Las Brisas housing project. As security for this loan, Development purported to deliver and pledge Bracero's demand mortgage note of $2 million, although this note was apparently still in Girod's possession and remained there. On May 22, 1984, Development withdrew approximately $1.4 million from its line of credit with Girod and executed a promissory note in the same amount, payable to Girod on demand. Approximately $1.3 million of this May 22 withdrawal was, however, retained by Girod as payment of the outstanding balance of the debt on the 1981 loan to Bracero, which Development had agreed to pay. Also on May 22, 1984, Girod issued a credit voucher in favor of Bracero for this amount with the description, "cancellation of Bracero and Rivera's loan 25–85–70–9." (as translated by the district court).

In August, 1984, the Secretary of the Treasury of Puerto Rico ordered Girod closed. FDIC was appointed as receiver of the bank. Pursuant to 12 U.S.C. § 1823(c)(2), FDIC in its corporate capacity purchased from FDIC in its capacity as receiver certain of Girod's assets. At this time, there was $1.67 million outstanding on Development's debts to Girod. In addition to the promissory notes issued by De-

velopment, Girod's files acquired by FDIC contained the promissory mortgage note executed in 1981 (and increased in 1983) by Bracero for $2 million.

In January, 1985, FDIC brought suit against several defendants seeking to recover the $1.67 million still outstanding on Development's debt. FDIC sought to recover against Development on the basis of the promissory notes executed by it, and against Bracero on the basis of the $2 million mortgage note executed by Bracero and subsequently pledged by Development to secure the loans to Development, which were then in default. On March 23, 1987, the district court entered judgment for FDIC against Development in the amount of $1.67 million.[1] FDIC has not been able to execute the judgment, however, because Development has no assets. On September 7, 1988, the district court dismissed the complaint against Bracero. The district court entered an amended final judgment on February 21, 1989.

## Discussion

### I. Cancellation of the Promissory Mortgage Note

■ The district court held that Bracero was not liable on the mortgage note, because Girod tacitly consented to Development's assumption of Bracero's original debt, and thereby released Bracero from any liability on the $2 million mortgage note. See 30 L.P.R.A. § 2560.[2] The court relied on the facts that at a committee meeting, officers of Girod expressly accepted Development as the new debtor; that Girod provided Development with the funds to pay back Bracero's debt; that Development did in fact pay back Bracero's debt; and that Girod issued to Bracero a credit slip indicating that its debt had been cancelled. 694 F.Supp. at 1035–37. The court concluded that when Girod accepted Devel-

---

1. The district court has rendered final dispositions on FDIC's other claims, and they are not relevant to this appeal.

2. Section 2560 provides, in part,
   When a mortgaged property is sold and the seller and the purchaser should have agreed that the buyer shall subrogate himself not only with respect to the liabilities derived from the mortgage, but also with respect to the personal obligations secured therein, the seller shall be released from said obligations, if the creditor gives his express or tacit consent.

opment's payment of Bracero's debt and then cancelled that debt, it discharged Bracero's $2 million mortgage note.

While apparently conceding that Bracero's original debt to Girod was cancelled, FDIC argues that the $2 million demand mortgage note, executed by Bracero in exchange for Girod's extension of credit to Bracero, and later pledged by Development as purported security for Girod's loans to Development, was never properly cancelled and therefore Bracero remains liable on the note. FDIC thus seeks to hold Bracero liable not for its original debt, but for Development's debt. The district court rejected this argument, ruling that "it is well established under Puerto Rico law that a mortgage is accessory to a principal debt and automatically falls when the underlying debt does." 694 F.Supp. at 1037 (citing Puerto Rico law commentators).

We find no error in the district court's determination. Under the Puerto Rico Commercial Code, Bracero's promissory note to Girod was discharged by the payment and cancellation of the underlying debt. *See* 19 L.P.R.A. § 201 ("A negotiable instrument is discharged: (1) By payment in due course by or on behalf of the principal debtor ... (3) by the intentional cancellation thereof by the holder....."). The mortgage which guaranteed the debt was a subsidiary or accessory obligation to the underlying debt. *See, e.g., Federal Deposit Insurance Corp. v. Urbanizadora Altomar, Inc.,* 716 F.Supp. 701, 705 (D.P.R. 1989) ("A mortgage is merely a guarantee of a debt secured by a particular property.") Consequently, the mortgage itself was also extinguished when the principal debt was paid. *See* 31 L.P.R.A. § 3204 ("The remission of the principal debt shall extinguish the accessory obligations"); *Federal Deposit Insurance Corp. v. P.L.M. International, Inc.,* 834 F.2d 248, 251 (1st Cir.1987) (Under Puerto Rico law, "the extinction of a principal obligation also extinguishes all accessory obligations."); *Warner Lambert Co. v. Superior Court of Puerto Rico,* 101 D.P.R. 391, 1 Official Translations of the Puerto Rico Supreme Court 535, 547 (1973) ("the extinction of the obligation carries with it the extinction of

the guarantees and other accessory rights"). *See generally* 59 C.J.S. *Mortgages* § 453, at 708–09 (1949) ("it is well established that, where a mortgage is given to secure the payment of a specific debt, payment of such debt as a general rule, in the absence of a contrary intent, extinguishes or discharges the mortgage and the lien thereof and terminates the mortgagee's rights where ... the debt is paid by the mortgagor or by a purchaser of the mortgaged premises who assumed payment of the mortgage.") (footnotes omitted).

FDIC nonetheless contends that the mortgage note was not cancelled simply by the payment and cancellation of Bracero's principal debt. It argues that since the mortgage note was a negotiable instrument payable to the bearer on demand, the note and the corresponding mortgage lien could only be cancelled by "inutilization of the promissory note," which occurs only by marking the note "paid, cancelled, void, or otherwise, and subsequently executing a deed." FDIC relies on 30 L.P.R.A. § 2462, which provides, in part, that "Mortgage registrations constituted to secure obligations represented by titles that may be conveyed by endorsement or payable to the bearer ... shall be totally or partially cancelled by a deed granted by the legitimate owners of the aforementioned titles ..."

We do not agree with FDIC that section 2462 permits it to recover on a mortgage note where the underlying debt was paid and cancelled by the lender. Section 2462 by its terms does not relate to cancellation of mortgage notes; rather it deals with cancellation of mortgage registrations. The fact that the public registration of the mortgage was not formally cancelled does not automatically mean that Bracero would have remained liable on the note to Girod, and subsequently to FDIC. The effect of such registration is that "it shall be presumed that the recorded rights exist and belong to their titleholder in the form specified by the respective entry." 30 L.P.R.A. § 2354. This presumption, however, may be rebutted by "proof to the contrary." *Id.* In this case, Bracero's proof established that the underlying debt, the promissory

note, and the accessory mortgage obligation were cancelled by payment.

## II. *Development's Purported Pledge of the Promissory Mortgage Note*

■ FDIC also asserts that the district court erred in concluding that Development's pledge of the mortgage note as security for Development's debt was invalid. FDIC argues that even if the mortgage note was cancelled with regard to Bracero's original debt, the note, as a negotiable instrument, could still be validly pledged by Development, because, FDIC argues, Development was a holder in due course of the note. Under Puerto Rico law, a holder in due course is defined as one who has taken a negotiable instrument that is complete and regular on its face, before the instrument is overdue, in good faith and for value, and without notice of any infirmity in the instrument or defect in the title of the person negotiating it. 19 L.P.R.A. § 92. A holder in due course "holds the instrument free from any defect of title of prior parties, and free from any defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon." 19 L.P.R.A. § 97. *See also* 19 L.P.R.A. § 17. FDIC argues that Development was a holder in due course of the promissory mortgage note executed by Bracero and, therefore, Development could validly negotiate the note or, as it allegedly did here, pledge it as security for its debt to Girod.

FDIC's argument is unavailing for at least two reasons. First, the district court found that there was no evidence that Development ever took possession of the mortgage note. 694 F.Supp. at 1034. Having never had possession of the note, Development could not even qualify as "a holder who has taken the instrument" under the Puerto Rico Commercial Code, 19 L.P.R.A. § 92. *See* 19 L.P.R.A. §§ 381(8), 381(7) (" 'Holder' means the payee or indorsee of a bill or note who is *in possession* of it, or the bearer thereof."; " 'Bearer' means the person *in possession* of a bill or

note which is payable to the bearer.") (emphasis added). It follows, *a fortiori* that Development could not qualify as a holder in due course under section 92. Since Development never took the note as a holder in due course or in any capacity, we do not see how it could validly pledge it to Girod as security for its debt. *See* 31 L.P.R.A. § 5001 (among "the essential requisites of the contracts of pledge and of mortgage" is "that the thing pledged or mortgaged is owned by the person who pledges or mortgages it").

■ A second fatal flaw in FDIC's theory is that even if Development had taken possession of the mortgage note and had given consideration for the note, it would not qualify as a holder in due course. Although a holder of an instrument is "deemed prima facie to be a holder in due course,"[3] a holder will not qualify as a holder in due course if he took the instrument with "notice of any infirmity in the instrument." 19 L.P.R.A. § 92(4). The instrument that Development allegedly held was "discharged by payment," under 19 L.P.R.A. § 201, when Girod accepted payment of Bracero's debt. And there is no question that Development had actual notice of the discharge, because it was Development that assumed and paid the debt, thereby discharging the instrument. Accordingly, Development had actual notice of an infirmity in the instrument and it could not take that instrument as a holder in due course.

## III. *FDIC's Status as Holder of the Note*

■ It might be argued that Bracero's defense that the obligation underlying the mortgage note was satisfied by payment cannot be asserted against FDIC, because FDIC–Corporate is a holder in due course of the note by virtue of its good faith purchase of the note from FDIC–Receiver. *See FDIC v. Grupo Girod Corp.*, 680 F.Supp. 486, 489–91 (D.P.R.1988) (holding that FDIC–Corporate was a holder in due course of a promissory note that it had purchased from FDIC–Receiver), *reversed*

---

**3.** 19 L.P.R.A. § 99.

*and remanded*, 869 F.2d 15 (1st Cir.1989) (finding material issues of fact as to whether the note was overdue when FDIC acquired it; whether FDIC had notice of infirmity in the note; and whether FDIC had purchased it in good faith). However, FDIC has not specifically argued to this court that it is a holder in due course as a result of its purchase of the note from FDIC–Receiver.[4] Moreover, FDIC did not apprise the district court of this theory. As a result, it has waived any such argument. *See, e.g., Saco Defense System v. Weinberger*, 806 F.2d 308, 309 (1st Cir. 1986) ("There is no question that we will not consider a legal issue or theory not presented to the trial court.").

■ Even had FDIC properly raised this argument, on the record before us, the argument would have been unavailing. In determining whether the cancellation of Bracero's debt was concealed from FDIC at the time FDIC acquired Girod's assets, the district court found that "Notice of Development's payment of Bracero's bank balance and the bank's own documentation cancelling the same were in the hands of FDIC *at all relevant times* and, in fact, were produced by FDIC at trial." 694 F.Supp. at 1038 (emphasis added). FDIC has not challenged this finding. Thus, since FDIC had actual notice at the time it purchased Girod's assets that Bracero's debt had been cancelled, it had "notice of [an] infirmity in the instrument" and therefore would not be entitled to recover on the mortgage note as a holder in due course. 19 L.P.R.A. § 92.

## IV. *Applicability of 12 U.S.C. § 1823(e)*

■ FDIC's final argument is that 12 U.S.C. § 1823(e) requires reversal of the district court's decision. Section 1823(e) provides that the rights and interests of the FDIC in assets acquired from a bank pursuant to its statutory duties cannot be diminished or defeated by agreements that do not meet certain requirements, including the requirement that the agreement be disclosed in bank records.[5] *See generally Langley v. FDIC*, 484 U.S. 86, 90–93, 108 S.Ct. 396, 400–02, 98 L.Ed.2d 340 (1987) (discussing scope of "agreement" under section 1823(e)). FDIC argues that Bracero, in neglecting to retrieve the mortgage note from Girod, "lent itself to an unwritten agreement or scheme" likely to mislead the FDIC. Under this alleged secret agreement, Girod was allowed to keep the note "ostensibly as security for another loan, and thus mislead the bank examiners," and in exchange Girod agreed not to negotiate the mortgage note or demand payment on it. Since section 1823(e) protects the FDIC from such an agreement, FDIC contends that Bracero is estopped from defending on the ground that the mortgage note was cancelled.

The district court concluded that Bracero's failure to retrieve the note was due to good faith neglect on Bracero's part and that there was no secret agreement between Bracero and Girod. 694 F.Supp. at

---

**4.** Nowhere in FDIC's brief does it state that *FDIC* is a holder in due course. It does argue that *Development* was a holder in due course and that "FDIC was entitled to rely on the assumption that the note represented a legally valid credit to be paid to Girod, the holder thereof." It also states parenthetically that "FDIC is presently the holder." However, none of these statements is supported by an argument that FDIC–Corporate was a good faith purchaser of the note from FDIC–Receiver. Rather, the statements rely on FDIC's argument that the note was validly pledged as security for Development's debt. Indeed, FDIC states that "the only debt claimed by FDIC is the balance due by Development." As is discussed above, however, the note was never validly pledged as security for Development's debt.

**5.** Section 1823(e) provides, in part,

> No agreement which tends to diminish or defeat the right, title or interest of the Corporation [FDIC] in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

12 U.S.C. § 1823(e).

1033, 1035, 1038. FDIC has not demonstrated that these determinations were clearly erroneous and we, therefore, must agree that FDIC has failed to establish the existence of any undisclosed agreement that would implicate section 1823(e).

Even if there were a secret agreement between Bracero and Girod, however, section 1823(e) would not entitle FDIC to recover on the note, because the note was discharged by the payment and cancellation of the underlying debt before FDIC ever obtained it. Since the note was invalidated by acts that were independent of the alleged secret agreement, the note was not an asset protected by section 1823(e). *See Commerce Federal Savings Bank v. FDIC,* 872 F.2d 1240, 1244–45 (6th Cir. 1989) ("the statute 'does not apply when ... the parties contend that no asset exists ... and that such invalidity is caused by acts independent of any understanding or side agreement.'") (quoting *FDIC v. Merchants National Bank of Mobile,* 725 F.2d 634, 639 (11th Cir.), *cert. denied,* 469 U.S. 829, 105 S.Ct. 114, 83 L.Ed.2d 57 (1984)); *Grubb v. FDIC,* 868 F.2d 1151, 1158–59 (10th Cir.1989) (1823(e) is inapplicable where notes were voided before FDIC acquired them). *See also Langley,* 484 U.S. at 93–94, 108 S.Ct. at 402–03 (where instrument is rendered void, rather than merely voidable, before being acquired by FDIC, the instrument is not an asset protected by section 1823(e)).[6]

*Affirmed. Costs to appellee.*

---

**6.** *FDIC v. P.L.M. International Inc.,* 834 F.2d 248 (1st Cir.1987), relied on by FDIC, is inapposite. In that case, FDIC sought to enforce a letter of guarantee against the guarantor. We held that the guarantor could not rely on a release agreement as a defense, because the agreement did not meet the requirements of section 1823(e).

The note in this case was not extinguished by any such separate agreement, but was extinguished by Girod's consent to Development's assumption of the underlying debt under 30 L.P.R.A. § 2560 and the payment and cancellation of the debt—circumstances that were not present in *P.L.M. International.*