STAHL, Circuit Judge.
 

 In this appeal, defendant-appellant Santa Barbara Corporation (“Santa Barbara”) challenges the district court’s entry of summary judgment in favor of plaintiff-appel-lee Federal Deposit Insurance Corporation (“the FDIC”). Finding no error in the district court’s ruling, we affirm.
 

 BACKGROUND
 

 On September 10, 1975, Santa Barbara obtained a $90,000 loan from Banco Central, a Puerto Rico bank. Santa Barbara used the proceeds of the loan to purchase real property in the municipality of Bayamon, Puerto Rico (“the Bayamon property”). In exchange for the loan, Santa Barbara issued a note in the principal amount of $90,000, payable with interest on demand to bearer. The note was secured with a mortgage on the Bayamon property.
 

 Subsequently, on September 15, 1977, Santa Barbara sold the Bayamon property to International Educational Development Services, Inc. (“International”). The deed of sale reflects that International agreed to pay the $90,000 note and accrued interest “when due.” Because International so agreed, it withheld the value of the note from the purchase price paid to Santa Barbara.
 

 The record of this case does not indicate the whereabouts of the Santa Barbara note until June of 1983, when it appears in International’s possession in a lawsuit pending in the Puerto Rico Superior Court.
 
 See Union Trust Co. v. World Univ., Inc.,
 
 No. 83-2933 (P.R.Super.Ct. July 6, 1983). In that case, Union Trust Company (“Union”), a federally insured bank in Puerto Rico, sued World University, Inc. (“World”), a Puerto Rico corporation, on a debt. The Puerto Rico Superior Court entered judgment against World. The judgment reveals that International, although not a party to the Puerto Rico Superior Court law suit, pledged Santa Barbara’s bearer demand note as a guarantee of payment of World’s debt to Union. The judgment also indicates that Union became a holder of the $90,000 note.
 

 In December of 1983, Union was ordered closed and the FDIC was appointed its receiver. Among Union’s assets, FDIC-receiver found the facially valid Santa Barbara note. FDIC-receiver then sold the note to the FDIC in its corporate capacity. FDIC-corporate commenced suit against Santa Barbara for payment of the note and moved for summary judgment. Santa Barbara responded with a cross-motion for summary judgment, asserting that the note had been paid by International.
 

 
 *13
 
 The district court granted the FDIC’s motion. In so doing, the court ruled,
 
 inter alia,
 
 that the FDIC was a holder in due course of a facially valid bearer note and, as such, was entitled to judgment on it as a matter of law. We agree.
 
 [1]
 

 DISCUSSION
 

 I. Standard of Review
 

 Summary judgment is appropriate where “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Fed.R.Civ.P. 56(c);
 
 see also Celotex Corp. v. Catrett,
 
 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986);
 
 Aponte-Santiago v. Lopez-Rivera,
 
 957 F.2d 40, 40-41 (1st Cir.1992). The burden is upon the moving party to “put the ball in play, averring ‘an absence of evidence to support the nonmoving party’s case.’ ”
 
 Garside v. Osco Drug, Inc.,
 
 895 F.2d 46, 48 (1st Cir. 1990) (quoting
 
 Celotex,
 
 477 U.S. at 325, 106 S.Ct. at 2554). “The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both ‘genuine’ and ‘material.’ ”
 
 Id.
 
 (citations omitted). In determining whether factual issues exist, we read the record “in the light most amiable to the nonmovants and indulge all reasonable inferences favorable to them.”
 
 Id.
 

 Our review of a summary judgment ruling is plenary.
 
 Hoffman v. Reali,
 
 973 F.2d 980, 984 (1st Cir.1992). Moreover, we are not limited to the district court’s reasoning. Instead, we may “affirm the entry of summary judgment on any independently sufficient ground made manifest by the record.”
 
 Quintero v. Aponte-Roque,
 
 974 F.2d 226, 228 (1st Cir.1992) (quoting
 
 United States v. One Parcel of Real Property,
 
 960 F.2d 200, 204 (1st Cir.1992)).
 

 II. Law to be Applied
 

 As an initial matter, we note that there has been some confusion between the parties to this appeal as to the applicable law. Before the district court, the parties litigated primarily on the basis of Puerto Rico commercial law, but made passing references to federal statutory and common law. As a result, the district court’s holding was anchored predominantly in Puerto Rico law.
 

 The FDIC now urges the application of federal law. We have previously stated that federal law applies where, as here, the FDIC sues in its corporate capacity to collect on obligations acquired from the receiver of an insolvent bank. See,
 
 e.g., Federal Deposit Ins. Corp. v. Municipality of Ponce,
 
 904 F.2d 740, 745 (1st Cir.1990);
 
 Federal Deposit Ins. Corp. v. P.L.M. Int’l, Inc.,
 
 834 F.2d 248, 252 (1st Cir.1987). Yet, we have also noted an exception to this rule where the federal question is not raised by the parties.
 
 Municipality of Ponce,
 
 904 F.2d at 745. Moreover, we ordinarily will not entertain arguments made for the first time on appeal.
 
 See Buenrostro v. Collazo,
 
 973 F.2d 39, 44 (1st Cir.1992) (citing
 
 Clauson v. Smith,
 
 823 F.2d 660, 666 (1st Cir.1987)).
 

 Here, however, the issue need not be addressed because, in each regime, the analysis is essentially the same. Under both Puerto Rico law and the hornbook principles that necessarily would inform federal law, the FDIC, as possessor of a bearer note, is a holder of that note.
 
 See
 
 P.R. Laws Ann. tit. 19, § 381(8) (1989) (“ ‘Holder’ means the payee or indorsee of a bill or note, who is in possession of it, or the bearer thereof.”); U.C.C. § 1-201(20) (1989) (“ ‘Holder’ means a person who is in possession of ... an instrument ... issued or indorsed to ... bearer or’ in blank.”). A holder of a negotiable instrument is entitled to enforce payment in his/her own name. P.R. Laws Ann. tit. 19, § 91 (“The holder of a negotiable instrument may sue
 
 *14
 
 thereon in his[/her] own name____”); U.C.C. § 3-301 (“The holder of an instrument whether or not [s/]he is the owner may ... enforce payment in his[/her] own name.”). A holder in due course has all the rights of a holder.
 
 See generally
 
 P.R. Laws Ann. tit. 19, § 92; U.C.C. § 3-302(1). S/he also takes the instrument free from most claims on it and defenses to it.
 
 See
 
 P.R. Laws Ann. tit. 19, § 97 (“A holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves...-. ”); U.C.C. § 3-305 (“To the extent that a holder is a holder in due course [s/]he takes the instrument free from (1) all claims to it on the part of any person; and (2) all defenses of any party to the instrument with whom the holder has not dealt except [certain delineated “real” defenses not applicable to the instant case].”). Finally, the maker of a negotiable instrument engages that s/he will pay the instrument according to its tenor at the time of his/her engagement.
 
 See
 
 P.R. Laws Ann. tit. 19, § 111; U.C.C. § 3-413(1).
 

 III. Santa Barbara’s Arguments
 

 In its effort to counter such authority, Santa Barbara makes five arguments: (1) the FDIC had notice of infirmities in the note; (2) the FDIC tacitly consented to recognize International, and not Santa Barbara, as liable on the note; (3) the note was negotiated to the FDIC an unreasonable length of time after it was made; (4) because the note was not delivered to the FDIC by Santa Barbara, the FDIC cannot enforce it against Santa Barbara; and (5) the note was paid by International. Though Santa Barbara’s brief is not entirely clear on this point, the first four arguments appear directed towards challenging the district court’s ruling that the FDIC is a holder in due course, while the fifth seems to be asserted as a defense to Santa Barbara’s obligation as the note’s maker. We address each argument in turn.
 

 A. Notice of Infirmities
 

 Santa Barbara is correct in asserting that notice of defenses or infirmities in a note defeats holder in due course status.
 
 See
 
 P.R; Laws Ann. tit. 19, § 92 (“A holder in due course is a holder who has taken the instrument under the following conditions: ... that at the time it was negotiated to him[/her] [s/]he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.”); U.C.C. § 3-302(l)(c) (“A holder in due course is a holder who takes the instrument ... without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.”). Santa Barbara contends that the FDIC must have been aware of two facts that would have put it on notice that the note was defective: (1) that International simultaneously possessed the note and owned the Bayamon property which secured payment of the note; and (2) that Union only intended to acquire a mortgage over the Bayamon property, not the note itself, in accepting International’s pledge on behalf of World in 1983. Santa Barbara’s contention fails to withstand factual and legal scrutiny.
 

 First, Santa Barbara does not point to any evidence in support of its allegation that the FDIC knew that International owned the Bayamon property and possessed the note simultaneously. The Puer-to' Rico Superior Court judgment and the note do not
 
 themselves
 
 reflect this fact.
 
 [2]
 
 Moreover, Santa Barbara cannot seriously assert that the FDIC was under an obligation to investigate beyond the face of these documents when it acquired the note from Union.
 
 [3]
 
 As such, Santa Barbara’s
 
 *15
 
 allegation of notice is without factual evi-dentiary support.
 

 Second, a plain reading of the 1983 Puerto Rico Superior Court judgment undercuts Santa Barbara’s assertion regarding Union’s intentions at that time. The judgment makes clear that the mortgage would serve only as a guarantee to the note and that Union would be the owner and holder of the note.
 
 [4]
 
 In light of these facts and in the absence of other evidence, there is no merit to Santa Barbara’s argument that the FDIC had notice that Union was intending to acquire only a mortgage over the Bayamon property, and not the note itself.
 

 Finally, even were the FDIC to have had knowledge of such facts when it acquired the note, Santa Barbara has not made any argument that this knowledge would have constituted notice of an “infirmity in the instrument or defect in the title of the person negotiating it,” P.R. Laws Ann. tit. 19, § 92(4), or notice that the instrument had been “dishonored” or was subject to a “defense against or claim to it____” U.C.C. § 3-302(1)(e). Put another way, Santa Barbara has failed to assert, let alone demonstrate, that knowledge of these facts would deprive the FDIC of holder in due course status. We have repeatedly warned litigants that “issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.”
 
 See, e.g., Elgabri v. Lekas,
 
 964 F.2d 1255, 1261 (1st Cir.1992) (quoting
 
 United States v. Zannino,
 
 895 F.2d 1, 17 (1st Cir.),
 
 cert. denied,
 
 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990)). Accordingly, Santa Barbara’s “notice of infirmities” argument must fail.
 

 B. Tacit Consent
 

 Santa Barbara next argues that Union tacitly consented to International’s 1977 assumption of the obligation on the note, and that such consent, when taken together with the cancellation of the note through International’s alleged payment, discharged its obligation. We disagree.
 

 We have previously recognized that, under Puerto Rico law, a lender’s tacit consent to a third party’s assumption of liability on a note and acceptance of payment combine to cancel the note and preclude the FDIC from later recovering thereon.
 
 See Federal Deposit Ins. Corp. v. Bracero & Rivera, Inc.,
 
 895 F.2d 824, 826-28 (1st Cir. 1990). However, the situation in
 
 Bracero & Rivera
 
 bears little resemblance to the facts in the case before us.
 

 Bracero & Rivera
 
 also involved a facially valid note, payable to bearer on demand, found in the files
 
 oí
 
 a failed bank. However, prior to failure, the bank had accepted payment from a third party on the debt.
 
 [5]
 
 Additionally, the bank issued a credit voucher in favor of the defendant which contained the following notation: “cancellation of [defendant’s] loan 25-85-70-9.” Notice of this cancellation was in the FDIC’s possession at all relevant times.
 
 See generally id.
 
 at 825-29.
 

 The district court in
 
 Bracero & Rivera
 
 entered judgment in favor of defendant. In so doing, the court ruled that, under Puerto Rico law, the lender’s tacit consent to the third party’s assumption of liability on the note and acceptance of payment discharged the note.
 
 Id.
 
 at 826. We affirmed, noting that the FDIC’s notice of cancellation would preclude it from recovering as a holder in due course.
 
 Id.
 
 at 829.
 

 
 *16
 
 In the case at bar, however, there is no record evidence, such as the cancellation voucher in
 
 Bracero & Rivera,
 
 indicating that Union, at the time that it acquired the note as security for its judgment against World, tacitly consented to relieve Santa Barbara of its obligation on the note and look solely to International for payment. Despite Santa Barbara’s argument to the contrary, we simply do not see how Union’s acceptance of the note with knowledge of the 1977 deed agreement between International and Santa Barbara, if Union had such knowledge,
 
 [6]
 
 implies the existence of an intent on Union’s part to tacitly consent to hold International liable on the note. Furthermore, even if Union did so intend, the record is devoid of evidence indicating that the FDIC had notice of this intent. Thus, the doctrine of tacit consent, if applicable to this case, would not deprive the FDIC of holder in due course status.
 

 C. Unreasonable Time
 

 Relying on P.R. Laws Ann. tit. 19, § 93, Santa Barbara next argues that neither Union nor the FDIC is a holder in due course because the instrument was negotiated to Union and the FDIC an unreasonable length of time after its issuance.
 
 [7]
 
 Santa Barbara raised this argument for the first time in its motion requesting that the district court alter or amend its judgment.
 
 See
 
 Fed.R.Civ.P. 59(e).
 

 Rule 59(e) motions are “aimed at reconsideration, not initial consideration.”
 
 Harley-Davidson Motor Co., Inc. v. Bank of New England,
 
 897 F.2d 611, 616 (1st Cir.1990) (citing
 
 White v. New Hampshire Dept. of Employment Sec.,
 
 455 U.S. 445, 451, 102 S.Ct. 1162, 1166, 71 L.Ed.2d 325 (1982)) (emphasis in original). Thus, parties should not use them to “raise arguments which could, and should, have been made before judgment issued.”
 
 Id.
 
 (quoting
 
 Federal Deposit Ins. Corp. v. Meyer,
 
 781 F.2d 1260, 1268 (7th Cir.1986)). Motions under Rule 59(e) must either clearly establish a manifest error of law or must present newly discovered evidence.
 
 Meyer,
 
 781 F.2d at 1268. They may not be used to argue a new legal theory.
 
 Id.
 

 Here, there was no reason why Santa Barbara could not have made its “unreasonable time” argument before the district court entered judgment. Moreover, the argument neither reveals a manifest error of law nor presents newly discovered, evidence. As a result, we find no error in the district court’s refusal to amend or alter its judgment based on this argument.
 

 D. Improper Delivery
 

 Santa Barbara’s improper delivery argument suffers a similar fate. To the extent that Santa Barbara made this argument at all before the district court, it did so only in a most perfunctory manner. It is well settled that arguments made in a perfunctory manner below are deemed waived on appeal.
 
 See, e.g., Buenrostro,
 
 973 F.2d at 44 (citing
 
 McCoy v. Massachusetts Inst. of Technology,
 
 950 F.2d 13, 22 (1st Cir.1991),
 
 cert. denied,
 
 — U.S.-, 112 S.Ct. 1939, 118 L.Ed.2d 545 (1992)). We see no reason to depart from ordinary practice under the present circumstances, and accordingly we treat the argument as waived.
 

 E. Payment
 

 Having rejected Santa Barbara’s challenges to the district court’s finding that the FDIC is a holder in due course, we need not address Santa Barbara’s allegation of payment in an extended manner. The defense that a third party has paid a previous holder in order to discharge a note is a personal defense.
 
 See
 
 P.R.Laws Ann. tit. 19, § 97 (“A holder in due course holds the instrument ... free from any defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties thereon.”);
 
 see also
 
 James J. White and Robert S. Summers,
 
 *17
 

 Handbook of the Law Under the Uniform Commercial Code,
 
 § 14-9, at 573 (2d ed. 1980) (defenses not listed in U.C.C. 3-305(2) are personal defenses). Personal defenses may not be asserted against holders in due course.
 
 See
 
 P.R.Laws Ann. tit. 19, § 97; U.C.C. § 3-305. As a result, Santa Barbara’s assertion of payment cannot defeat the FDIC’s right to recover on the note.
 
 [8]
 

 CONCLUSION
 

 Because we find each of Santa Barbara’s arguments meritless, we affirm the judgment of the district court.
 

 Affirmed.
 

 [1]
 

 . To further support its ruling, the district court also relied on the protections afforded the FDIC by 12 U.S.C. § 1823(e) (1989). Because we find that the FDIC, as a holder in due course, is entitled to recover on the note, we do not address the applicability of 12 U.S.C. § 1823(e) to this dispute.
 

 [2]
 

 . Nowhere is it argued that the FDIC had before it a title search or a deed to the Bayamon property, the only documents in the record that could have indicated the property's owner in 1983, when the FDIC purchased Santa Barbara’s note.
 

 [3]
 

 . Any such obligation would undermine Congress’s desire to promote and facilitate purchase and assumption transactions, wherein FDIC-corporate purchases assets from FDIC-receiver, because these transactions must be completed in great haste.
 
 See Federal Deposit Ins. Corp. v. 604 Columbus Ave. Realty Trust,
 
 968 F.2d 1332, 1349-50 (1st Cir.1992).
 

 [4]
 

 . Specifically, the judgment provides:
 

 In guarantee of the obligations listed herein, [World] is bound to [Union] for the following: a) Second mortgage for $90,000 in principal
 
 as guarantee to
 
 a Bearer note with 12% yearly interest due on demand____ To establish by means of corresponding clarification document, that
 
 [Union] is the owner and holder of said mortgage note.
 

 (emphasis supplied).
 

 [5]
 

 . The note in
 
 Bracero & Rivera
 
 was originally secured by a mortgage on a housing development. The maker of the note sold the housing development to the third party, who retained enough money from the purchase price to pay off the maker’s note. Upon making an additional loan to the third party, the bank retained from the loan enough money to pay the note. Thus, the bank accepted payment on the note, and the third party owed the bank a new debt.
 
 See id.
 
 at 825-26.
 

 [6]
 

 . The record does not indicate that Union actually had this knowledge.
 

 [7]
 

 . P.R.Laws Ann. tit. 19, § 93 states:
 

 Where an instrument páyable on demand is negotiated an unreasonable length of time after its issue, the holder is not deemed a holder in due course.
 

 [8]
 

 . While evidence of payment would not change our analysis, we note that there was no direct evidence of payment in the record before us.