OCI MORTGAGE CORPORATION *v.* CAROLE N.
MARCHESE ET AL.
(AC 18909)

Lavery, Schaller and Hennessy, Js.

Argued October 19, 1999—officially released February 15, 2000

*Matthew J. Broder*, for the appellants (named defendant et al.).

*Matthew B. Woods*, for the appellee (plaintiff).

*Opinion*

LAVERY, J. The defendants Carole N. Marchese and Anthony Marchese (defendants) appeal from a judg-

ment of foreclosure rendered in favor of the plaintiff on the basis of the trial court's sustaining of the plaintiff's objections to an attorney trial referee's report. The defendants claim that the trial court improperly based its conclusion on the rationale that the *D'Oench, Duhme* doctrine and 12 U.S.C. § 1823 (e) bar the defendants' claims of setoff and payment of their mortgage. We agree with the defendants and reverse the judgment of the trial court.

The following facts and procedural history are set forth in *OCI Mortgage Corp.* v. *Marchese*, 48 Conn. App. 750, 751–52, 712 A.2d 449 (1998): "The defendants . . . executed a promissory note in the amount of $220,000, payable to Community Federal Savings and Loan Association (CFSLA), and secured by a mortgage on property that the defendants owned in Southport. While the note was still outstanding, the defendant Carole N. Marchese lent CFSLA $900,000 pursuant to a subordinated debenture agreement. Thereafter, Carole N. Marchese and CFSLA agreed that the defendants' mortgage note would be paid by applying CFSLA's interest payments on the debenture to the defendants' monthly mortgage payments.

"In October, 1989, CFSLA defaulted on its interest payments. Subsequently, the defendants formally demanded full payment on the debenture and informed CFSLA of their intention to exercise their right to set off the mortgage. By December, 1989, however, CFSLA was declared insolvent and the Resolution Trust Corporation (RTC) was appointed as its receiver in bankruptcy. The RTC assigned the defendants' mortgage and loan documents to Fairfield Affiliates, the original plaintiff here. Fairfield Affiliates then assigned the defendants' note and mortgage to OCI Mortgage Corporation (OCI) and OCI was substituted as the plaintiff.

"The trial court referred the case to an attorney trial referee. After the trial concluded, the attorney trial ref-

eree filed her report, in which she recommended that judgment enter in favor of the defendants. Specifically, the attorney trial referee found that the RTC knew about the agreements between CFSLA and the defendants, and that '[a]ll subsequent assignees of the [defendants'] mortgage note . . . including the plaintiff, OCI, accepted assignment of the note with notice of the $900,000 debt owed to the defendants, as well as the defendants' claim of set-off and payment.'

"The plaintiff moved to correct various portions of the attorney trial referee's report. The attorney trial referee, however, denied the majority of the plaintiff's requests. The plaintiff then filed exceptions to the attorney trial referee's report, as well as an objection to the acceptance of the report.

"The trial court sustained the plaintiff's objection to the acceptance of the attorney trial referee's report. The court ruled that, pursuant to 12 U.S.C. § 1823 (e), the RTC is entitled to the same protection as the Federal Deposit Insurance Corporation (FDIC). According to 12 U.S.C. § 1823 (e), '[n]o agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it . . . as receiver of any depository institution, shall be valid against the [FDIC] unless such agreement . . . [is] executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with acquisition of the asset by the depository institution.' The court concluded that because the execution of the defendants' mortgage and the execution of the subordinated debenture agreement were not contemporaneous, the subordinated debenture agreement was not valid against the RTC, and, therefore, it was not valid against the RTC's assignees. The trial court remanded the case to the attorney trial referee, directing the referee to 'proceed in a manner not inconsistent with' the trial court's memorandum of decision."

The decision was appealed to this court. We dismissed the appeal, concluding that the trial court's remanding of the case to the trial referee for further proceedings did not constitute an appealable final judgment. *OCI Mortgage Corp.* v. *Marchese*, supra, 48 Conn. App. 755. On October 5, 1998, the parties entered into a stipulation, the purpose of which was to allow a final judgment to enter from which a valid appeal would be taken. On October 7, 1998, the trial court rendered a judgment of strict foreclosure in accordance with the stipulation. The defendants appealed a second time to this court with the appeal now properly before us.

## I

The defendants' contentions focus on the application of a principle first stated in the seminal case of *D'Oench, Duhme & Co.* v. *Federal Deposit Ins. Corp.*, 315 U.S. 447, 62 S. Ct. 676, 86 L. Ed. 956 (1942), then codified and expanded at 12 U.S.C. § 1823 (e). We refer to the *D'Oench, Duhme & Co.* decision and § 1823 (e) throughout this opinion collectively as the *D'Oench, Duhme* doctrine. Specifically, the defendants argue that the *D'Oench, Duhme* doctrine does not bar their defenses of setoff and payment of their mortgage.

The *D'Oench, Duhme* doctrine arises when a bank fails through imprudent loans, rapid withdrawals of funds by depositors or other means. Subsequently, the FDIC becomes a receiver of the bank and assumes all the legal responsibilities of the failed institution, including the right to pursue and defend claims and liabilities of the failed bank.[1] Bank examiners rely on the written records of the bank to value outstanding

---

[1] The FDIC exclusively manages the RTC. 12 U.S.C. § 1441a (b) (1) (C); see also *Colorado State Banking Board* v. *Resolution Trust Corp.*, 926 F.2d 931, 935 (10th Cir. 1991). " 'Congress gave the RTC all of the receivership and conservatorship powers it granted the FDIC.' " *Umlic-Nine Corp.* v. *Lipan Springs Development Corp.*, 168 F.3d 1173, 1177 n.2 (10th Cir.), cert. denied, 528 U.S. 1005, 120 S. Ct. 499, 145 L. Ed. 2d 386 (1999).

loans. This process must be conducted very quickly, often within days or even hours, to manage the bank's assets as quickly and efficiently as possible. One of the FDIC's key responsibilities arising from these time-pressured efforts is to collect on unpaid loan obligations in an effort to meet the bank's liabilities.[2] See F. Galves, "Might Does Not Make Right: The Call for Reform of the Federal Government's *D'Oench, Duhme* and 12 U.S.C. § 1823 (e) Superpowers in Failed Bank Litigation," 80 Minn. L. Rev. 1323, 1339–40 (1996).

It is against a background similar to the present case that the *D'Oench, Duhme & Co.* decision came to pass. D'Oench, Duhme and Company sold bonds to Belleville Bank and Trust Company, upon which D'Oench, Duhme and Company ultimately defaulted. *D'Oench, Duhme & Co.* v. *Federal Deposit Ins. Corp.*, supra, 315 U.S. 454. To protect its image and to hide the past due bonds, D'Oench, Duhme and Company issued promissory notes to the bank to cover the value of the defaulted bonds. Id. The parties understood in a side agreement that the notes would never be collected. Id. The FDIC later obtained the notes from the failing Belleville Bank and Trust Company and attempted to collect, and D'Oench, Duhme and Company claimed that the note was unenforceable due to lack of consideration. Id., 456. The Supreme Court barred the defense reasoning that secret agreements should be banned where "the maker lent himself to a scheme or arrangement whereby the banking authority on which [the FDIC] relied in insuring the bank was or was likely to be misled." Id., 460. Subsequent to the *D'Oench, Duhme & Co.* decision, Congress passed the Federal Deposit Insurance Act, § 2 (13) (e) of which was codified at 12 U.S.C. § 1823 (e).

---

[2] For a more in-depth explanation of these activities see *Federal Deposit Ins. Corp.* v. *Bank of Boulder*, 865 F.2d 1134, 1136–38 (10th Cir. 1988) (describing functions required after closure of insolvent financial institution).

Section 1823 (e), which codified and partially expanded the *D'Oench, Duhme & Co.* decision, now stands as its statutory counterpart.

The legislative history shows that § 1823 (e) was enacted with humble aspirations. While seeking to change "simultaneously" in § 1823 (e) to "contemporaneously" as the statute now reads, one Representative noted: "[T]his whole [§ 1823 (e)] as amended applies only to future agreements. . . . It was never the intention of Congress to give to the Corporation a stronger position than that of the bank, and the adoption of the amendment, my amendment is offered to prove that heretofore it was the intent of Congress that any agreement in the absence of fraud, was binding on the Corporation." 96 Cong. Rec. 10,731–32 (1950), remarks of Representative Francis Walter.

This doctrine remained a modest one until the early 1980s, when, occasioned by the rise of bank failures, the application of the *D'Oench, Duhme* doctrine mushroomed. Today, the doctrine has assumed draconian proportions and virtually assures that the FDIC can recover note payments from debtors regardless of otherwise valid defenses that would have existed before the bank's failure. The *D'Oench, Duhme* doctrine now prohibits claims and defenses such as: accord and satisfaction, breach of condition precedent, breach of fiduciary duty, conspiracy, constitutional challenge, deceptive trade practice, failure of consideration, fraudulent inducement, laches, mitigation of damages, mutual mistake, negligence and unjust enrichment, to name a few. See 11 Am. Jur. 2d, Banks and Financial Institutions § 1095 (1997); F. Galves, supra, 80 Minn. L. Rev. 1375–78 (listing these and other claims and defenses).

As a result, the doctrine has received significant criticism amongst the judiciary for its harshness against

unwitting debtors. See, e.g., *Federal Deposit Ins. Corp.* v. *Bathgate,* 27 F.3d 850, 877 (3d Cir. 1994) (*D'Oench, Duhme* doctrine and § 1823 [e] can lead to what might be considered harsh result); *Federal Deposit Ins. Corp.* v. *Kasal,* 913 F.2d 487, 492 (8th Cir. 1990), cert. denied, 498 U.S. 1119, 111 S. Ct. 1072, 112 L. Ed. 2d 1178 (1991) (similar); *In re NBW Commercial Paper Litigation,* 826 F. Sup. 1448, 1476 (D.D.C. 1992) (court not ignorant of unusual results that *D'Oench, Duhme* doctrine generates, nor is court enamored of them); *L & R Prebuilt Homes, Inc.* v. *New England Allbank for Savings,* 783 F. Sup. 11, 14 (D.N.H. 1992) (court has empathy with plaintiff's position and dilemma but is powerless under law to grant remedial relief and is appalled by manner in which FDIC reacts to these situations). In spite of the significant criticism and calls for reform of the *D'Oench, Duhme* doctrine, it remains the law applicable to cases such as this one.

## II

With the previous discussion in mind, we now turn to the merits of this case. The resolution of this appeal turns on whether the *D'Oench, Duhme* doctrine applies to the defendants such that it bars their defenses of setoff and payment of the mortgage note. With questions of law such as this, our review is plenary. *Morton Buildings, Inc.* v. *Bannon,* 222 Conn. 49, 53–54, 607 A.2d 424 (1992). For reasons we will discuss, we reverse the judgment of the trial court.

## A

The defendants contend that the debenture to CFSLA constituted a valid setoff and that such setoff removes them from the application of the *D'Oench, Duhme* doctrine and the corresponding statute. The plaintiff responds that because the defendants did not formally follow the contractual steps prescribed in the debenture

agreement regarding notice and default, no setoff was established.[3] We disagree with the plaintiff.

The concept of setoff allows entities that owe each other money to apply their mutual debts against each other, thus avoiding the absurdity of making "A" pay "B" when "B" in fact owes "A." *Citizens Bank of Maryland* v. *Stumpf*, 516 U.S. 16, 18, 116 S. Ct. 286, 133 L. Ed. 2d 258 (1995). The right of setoff does not require a written document. Rather, "[t]he right of setoff, although it may arise out of a written instrument, is a common law equitable right that is not itself a written instrument." *Normand Josef Enterprises, Inc.* v. *Connecticut National Bank, Inc.*, 230 Conn. 486, 494, 646 A.2d 1289 (1994). "Set-off was unknown to the common law. . . . It was, however, early recognized in equity, which exercised its broad powers to prevent circuity of action . . . to enforce the maxim that he who seeks equity must himself do equity . . . and, in general, to do equity between the parties where such legal right

---

[3] Section 10.01 of the debenture addresses the contingency of default and § 10.02 provides for acceleration of the debt in the event of default. The debenture agreement, dated June 5, 1986, states in relevant part: "Section 10.01. Any one or more of the following shall constitute an event of default as the term is used herein:

"(a) Default for a period of 15 business days in the payment of interest on any Debenture after written notice thereof by certified mail to the [Community Federal Savings and Loan] Association by the debenture holder;

"Section 10.02. When any event of default described in Section 10.01 above has occurred and is continuing any holder of any Debenture may, by notice in writing sent by certified mail to the [Community Federal Savings and Loan] Association, declare the principal of and any accrued interest on such Debenture to be immediately due and payable without further demand, presentment, protest or notice of any kind . . . ."

The defendants mailed a letter to CFSLA on November 14, 1989, giving written notice pursuant to § 10.01 of the agreement. The letter stated that if the default was not cured, the defendants "will exercise all rights available to them not only under Section 10.02 of the foregoing Subordinated Debenture Agreement, but also under statutory and common law." No further letter or notification followed before CFSLA's demise. Ultimately, because of the nature of setoff as an operation of law, whether sufficient notice was given by the defendants is ultimately irrelevant.

of set-off as existed was not adequate to accomplish this result and the case fell within the limits of recognized equitable principles." (Citations omitted.) *Savings Bank of New London* v. *Santaniello*, 130 Conn. 206, 210–11, 33 A.2d 126 (1943). "Because a mortgage foreclosure action is an equitable proceeding, the trial court may consider all relevant circumstances to ensure that complete justice is done." *Reynolds* v. *Ramos*, 188 Conn. 316, 320, 449 A.2d 182 (1982).

The en banc decision of *Murphy* v. *Federal Deposit Ins. Corp.*, 38 F.3d 1490 (9th Cir. 1994), is on point. Simply put, the defendant in *Murphy* contended that his $100,000 debt should have been treated as a setoff against the FDIC's much larger debt owed to him. Id., 1504. The *Murphy* court concluded: "The reason that the set-off is not barred by 12 U.S.C. § 1823(e), is that the statute invalidates only an 'agreement' which diminishes the FDIC's right in its corporate capacity to collect on a note. Set-offs arising by operation of law, 'are not "agreements" within the meaning of § 1823(e).' [*Federal Deposit Ins. Corp.*] v. *State Bank of Virden*, 893 F.2d 139, 143 (7th Cir. 1990). We follow *Virden* in holding that set-offs arising by operation of law are not automatically barred by § 1823(e), although a particular set-off, if it amounts to a claim based on breach of an agreement, may be barred. Id. In this case, the set-off is the 'common' kind, described in [*Federal Deposit Ins. Corp.* v. *Mademoiselle of California*, 379 F.2d 660 (9th Cir. 1967)]. Murphy owed the Bank $100,000 on a note, and following presentment, dishonor, and assignment by United Grocers of the letters of credit to Murphy, the Bank owed Murphy $585,000 on its letters of credit. The letters of credit were not an undisclosed agreement. They were in the Bank's files and reflected in the footnote. Murphy was entitled to a judgment that the FDIC should take nothing in its action against him on his note, so that he would be the prevailing party for purposes of

attorneys' fees and costs, and to have interest computed on the basis that his debt stopped running, and the Bank's debt to him was reduced by the amount of the note." *Murphy* v. *Federal Deposit Ins. Corp.*, supra, 1504–1505.

*Federal Deposit Ins. Corp.* v. *State Bank of Virden*, supra, 893 F.2d 143, cited by *Murphy*, notes: "As a lexical matter, it is hard to think of setoff as an 'agreement' of any kind. . . . Setoffs are honored by virtue of trade custom and common law; rules of law recognizing particular ways to satisfy a debt are not 'agreements' within the meaning of § 1823(e). We therefore agree with the two cases that have held that setoffs accomplished before the assignment of a debt to FDIC-Corporate are not automatically barred by § 1823(e). *Olney Savings & Loan Ass'n* v. *Trinity Banc Savings Ass'n*, 885 F.2d 266, 274–75 (5th Cir. 1989); *Interfirst Bank Abilene* v. *[Federal Deposit Ins. Corp.]*, 777 F.2d 1092, 1094 (5th Cir. 1985). So far as our research reveals, no court of appeals has accepted the FDIC's argument [that every setoff is an unrecorded agreement not to collect and therefore is unenforceable]."

Indeed, our own Supreme Court has reflected on such a proposition, although admittedly well before the rise of modern banking law. In *Osborn* v. *Byrne*, 43 Conn. 155, 160 (1875), an individual made a deposit to a bank, "not for the ordinary purposes of a deposit, but for the purpose, and with the intention, of applying the same in payment of her indebtedness to the bank to that amount." Articulating reasoning that resembles today's doctrine, the court stated: "If the officers of the bank knew for what purpose the deposit was made, although the amount has never been in fact applied in cancellation of so much of her indebtedness to the bank, we think she should be allowed to set off the amount." Id.

Although a debt supposedly setoff against the FDIC's asset may be governed by the *D'Oench, Duhme* doctrine

because it is the result of an agreement not found in the bank's official documents; see, e.g., *Federal Deposit Ins. Corp.* v. *Texarkana National Bank*, 874 F.2d 264, 268 (5th Cir. 1989), cert. denied, 493 U.S. 1043, 110 S. Ct. 837, 107 L. Ed. 2d 833 (1990); no such problem exists here as the note, the debenture and the payments of the mortgage note by the application of the debenture interest to the mortgage note are all in the bank's records. As in *Murphy*, the defendant owed the bank $220,000 and the bank was in default on $900,000, which is the "common" kind of setoff noted previously. The defendants' setoff arises by operation of law. Accordingly, no "agreement" exists pursuant to 12 U.S.C. § 1823 (e) such that the *D'Oench, Duhme* doctrine would apply to bar the defenses of the defendants.

## B

As a further result of the setoff by operation of law, the mortgage note does not constitute an "asset" falling within the bounds of the *D'Oench, Duhme* doctrine. Section 1823 (e) provides that "[n]o agreement which tends to diminish or defeat the interest of the Corporation *in any asset acquired by it* . . . shall be valid against the Corporation . . . ." (Emphasis added.) Accordingly, "the statute 'does not apply when . . . the parties contend that no asset exists . . . and that such invalidity is caused by acts independent of any understanding or side agreement.' " *Commerce Federal Savings Bank* v. *Federal Deposit Ins. Corp.*, 872 F.2d 1240, 1245 (6th Cir. 1989); see also *Grubb* v. *Federal Deposit Ins. Corp.*, 868 F.2d 1151, 1158–59 (10th Cir. 1989) (§ 1823 inapplicable when notes are voided before FDIC acquires them). When such an asset simply does not exist, it would leave "no 'right, title or interest' that could be 'diminish[ed] or defeat[ed].' " *Langley* v. *Federal Deposit Ins. Corp.*, 484 U.S. 86, 93–94, 108 S. Ct. 396, 98 L. Ed. 2d 340 (1987).

For example, in *Federal Deposit Ins. Corp.* v. *Bracero & Rivera, Inc.*, 895 F.2d 824, 825–26 (1st Cir. 1990), the FDIC sought to enforce against the defendant a promissory note that it possessed, even though a third party had paid the note and the bank sent a letter of credit to the defendant. The court concluded that the defendant's obligations were extinguished upon payment of the underlying debt regardless of whether the explicit cancellation of the promissory note had been accomplished. Id., 830.

In this case, the default on the payment of the debenture agreement of $900,000 operated to extinguish the defendants' debt by reason of setoff, and as such the asset did not exist at the time the RTC took over CFSLA. The debenture agreement was in writing and recorded in the formal records of the bank. No part of the debenture consisted of a side agreement or oral understanding that could possibly mislead the banking authorities in valuing the loan. Accordingly, a fundamental policy behind the *D'Oench, Duhme* doctrine, protecting the FDIC from misvaluing bank assets such that it impedes the management of the bank's insolvency, is not thwarted. See *D'Oench, Duhme & Co.* v. *Federal Deposit Ins. Corp.*, supra, 315 U.S. 460; *Twin Construction, Inc.* v. *Boca Raton, Inc.*, 925 F.2d 378, 382 (11th Cir. 1991); *Federal Deposit Ins. Corp.* v. *Meo*, 505 F.2d 790, 792 (9th Cir. 1974). In *Federal Deposit Ins. Corp.* v. *Castle*, 781 F.2d 1101, 1107 (5th Cir. 1986), the court stated that "[t]he purpose [of § 1823 (e)] is to protect the FDIC from hidden agreements that would defeat its interest in what is otherwise a facially valid note. Such hidden agreements would prevent the FDIC from accurately valuing assets and from making informed decisions on how best to handle the bank's insolvency. The concern is thus with agreements that are not made part of the note." (Internal quotation marks omitted.) In *Murphy* v. *Federal Deposit Ins. Corp.*, supra, 38 F.3d 1499–1500,

the court held that "[w]here a person does not lend himself to a scheme which might cause bank examiners to overvalue a bank, by giving the bank a writing which meant less than what is said or otherwise, then *D'Oench, Duhme* has no application."

The debenture was due and payable upon default. The defendants and CFSLA agreed that the monthly payment of the mortgage would be paid by CFSLA's interest payments of the debenture. Accordingly, the note was not a bank asset at the time of the takeover by the RTC because the debenture was in default that was not cured after notice. The setoff took place and, thus, falls outside the application of the *D'Oench, Duhme* doctrine.

## C

In addition, the *D'Oench, Duhme* doctrine and § 1823 (e) also do not apply to bilateral agreements where, as here, the very document that the plaintiff seeks to enforce imposes obligations on the lender that have been breached. "Where a note or written agreement imposes bilateral obligations on the parties in addition to the obligation by the maker to pay a sum certain, the borrower may assert such claims or defenses against the FDIC or [Federal Savings and Loan Insurance Corporation]. . . . Such claims or defenses arising out of the written agreement between the borrower and the failed bank will not be precluded under the *D'Oench Duhme* doctrine." (Citations omitted.) *In re Hunter*, 100 B.R. 321, 325–26 (Bankr. S.D. Tex. 1989).

Additionally, "[w]hen the enforcement of a separate collateral or secret agreement would alter the terms of an asset acquired by the FDIC so that the FDIC's right, title, or interest in the asset would be defeated or diminished, § 1823(e) comes into play. . . . When, however, the asset upon which the FDIC is attempting to recover is the very same agreement that the makers allege has

been breached by the FDIC's assignors, § 1823(e) does not apply. None of the policies that favor the invocation of this statute are present in such cases because the terms of the agreement that tend to diminish the rights of the FDIC appear in writing on the face of the agreement that the FDIC seeks to enforce." (Citations omitted; internal quotation marks omitted.) *Howell* v. *Continental Credit Corp.*, 655 F.2d 743, 747 (7th Cir. 1981); see also *Resolution Trust Corp.* v. *Oaks Apartments Joint Venture*, 966 F.2d 995 (5th Cir. 1992); *Riverside Park Realty Co.* v. *Federal Deposit Ins. Corp.*, 465 F. Sup. 305, 312–13 (M.D. Tenn. 1978).

The facts reveal a $220,000 mortgage note payable to CFSLA and a $900,000 subordinated debenture agreement sufficiently bound together to constitute a bilateral agreement for purposes of avoiding the *D'Oench, Duhme* doctrine. The attorney trial referee's report dated July 11, 1997, found, "the defendants and CFSLA further agreed that the $220,000 mortgage of September 13, 1983, would be paid by applying CFSLA's interest payments due to the [defendants] to the monthly mortgage payments due. . . . The above agreements between the defendants and CFSLA effectively modified the original promissory note contemporaneously with setting forth the payment terms on the debenture." Accordingly, the defendants are not subject to the *D'Oench, Duhme* doctrine because of the presence of a sufficiently bilateral obligation that more than compensates for their indebtedness.

## D

"It is an abiding principle of jurisprudence that common sense does not take flight when one enters a courtroom." *State* v. *Zayas*, 195 Conn. 611, 620, 490 A.2d 68 (1985). Put simply, CFSLA loaned the defendants $220,000. Carole Marchese loaned $900,000 to CFSLA pursuant to the terms of a subordinated debenture

agreement. Allowing a subsequent purchaser of the bank's note to recover the $220,000 from the "debtor," when the "debtor" in fact is owed far more money than she owes the bank, shocks the judicial conscience. See *Atwood* v. *Vincent*, 17 Conn. 575, 582 (1846) (equity demands that parties should be placed in situations where they agreed to be placed).

As the attorney trial referee noted in her decision, "[u]nder the circumstances of the case, to hold that an extinguished debt suddenly reverts to its original state simply because the RTC is involved would be so inequitable as to shock the conscience of the court."

The judgment is reversed and the case is remanded with direction to render judgment for the defendants.

In this opinion the other judges concurred.