[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-10962
_____

D.C. Docket No. 3:12-cv-00548-MCR-EMT


FEDERAL DEPOSIT INSURANCE CORPORATION,
as Receiver for Gulfsouth Private Bank,

Plaintiff-Counter Defendant-
Third Party Defendant-Appellee,

versus

WILLIAM L. AMOS,

Defendant-Third Party Plaintiff-
Counter Claimant-Appellant,


ZTF FAMILY LP, et al.,

Third Party Plaintiffs,


INNOVATION TREND SETTERS OF AMERICA LLC,

Defendant,


JOSEPH STORY, et al.,

Third Party-Counter Defendants-Defendants.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(August 2, 2017)

Before ED CARNES, Chief Judge, WILLIAM PRYOR, Circuit Judge, and
MOORE,[*] District Judge.

PER CURIAM:

When the FDIC attempts to collect outstanding obligations in its role as the

receiver for a failed bank, a borrower's defenses are somewhat limited. William

Amos ran up against those limitations when he was barred from asserting that a

note and a guaranty that he had signed were the product of fraud.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Amos, Joseph Story, and Roderic Wright created Innovation Trendsetters of

America, L.L.C., for the purpose of "develop[ing], marketing, and manag[ing] real

property." As part of the company's formation, Wright contributed to Innovation

property that he owned on Bayou Drive in Destin, Florida.

About a month after Innovation was formed, Wright, as "managing

member" of the company, executed a promissory note under which GulfSouth

_____

[*] Honorable K. Michael Moore, Chief Judge, United States District Court for the
Southern District of Florida, sitting by designation.

Private Bank would loan Innovation $4.151 million (the Innovation note). The Innovation note was secured by the Bayou Drive property. Three days later Amos signed a "continuing guaranty," which provided that his "liabilities and obligations" would be "unlimited" and would "include all present and future written agreements between [Innovation] and [GulfSouth] . . . including, but not limited to, the promissory note and agreements described below." Below that statement the guaranty contained a table in which several columns were left blank, including the "interest rate" column and the "principal amount/credit limit" column. But the "loan number" column listed the Innovation note's loan number.

Several months after that, Amos, on his own behalf, executed a promissory note under which GulfSouth loaned him $200,000 (the Amos note). He originally intended to use the proceeds of the loan to make interest payments on the Innovation note. But he stopped making those payments after the FBI told him that Wright was a "serial financial predator" and that Wright's activities in connection with Innovation might be fraudulent.

GulfSouth filed a complaint in Florida state court alleging that Innovation and Amos had defaulted on their respective notes and that Amos was a guarantor of the Innovation note. While the litigation was pending, the Florida Office of Financial Regulation closed GulfSouth and appointed the FDIC as the failed bank's receiver. Substituted in GulfSouth's place as the plaintiff, the FDIC

3

removed this case to federal court under 12 U.S.C. § 1819(b)(2)(B). After that, in an amended answer Amos asserted six affirmative defenses attacking the validity of the instruments and alleging that GulfSouth knew "of the fraudulent activities being undertaken by [Wright]." He also brought a counterclaim for declaratory relief seeking a judgment that the guaranty was "void and unenforceable due to the fraudulent activities of Wright and GulfSouth."

The FDIC moved for summary judgment, which the district court granted in part. The court concluded that the D'Oench doctrine barred Amos' affirmative defenses and counterclaim, and it ruled that Amos was directly liable for the Amos note and liable as the guarantor of the Innovation note. See D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 62 S. Ct. 676 (1942). However, it allowed the question of damages to proceed to a bifurcated trial: the amounts due on the Innovation note and the Amos note would be determined by a jury, while the amount due on the guaranty would be determined by the district court in a bench trial.

Before those trials were held, Amos and Innovation entered into a short sale agreement with the FDIC.[1] The FDIC agreed to cancel its mortgage on the Bayou Drive property in exchange for Innovation selling the property. The agreement provided that the sale price would be credited against the amount due on the Innovation note (which would reduce Amos' liability under the guaranty). It also

---

[1] All of the agreements at issue in this appeal contained choice of law clauses providing that they would be governed by Florida law.

4

contained language that, according to Amos, suggested that he and Innovation could use the property's fair market value, instead of the sale price, as a credit against their liability. The FDIC filed motions in limine seeking to exclude any evidence of the Bayou Drive property's fair market value, and the district court granted those motions.

After the trials, the jury found that the amount due on the Amos note was $239,558 and the district court found Amos liable for $2,983,943 under the guaranty.[2] This is Amos' appeal.

## II. AMOS' AFFIRMATIVE DEFENSES AND COUNTERCLAIM

Amos first challenges the district court's summary judgment order barring his affirmative defenses and counterclaim.[3] "We review de novo a district court's grant of summary judgment and draw all inferences and review[ ] all evidence in the light most favorable to the non-moving party." Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1318 (11th Cir. 2012) (quotation marks omitted). "Summary judgment is properly granted when there is no genuine issue

---

[2] Amos' liability under the guaranty was equal to the principal and interest that was owed on the Innovation note minus the credit from the short sale of the Bayou Drive property.

[3] The FDIC contends that we lack jurisdiction to consider issues related to the Amos note because he did not state in his amended notice of appeal that he was appealing from the district court's final judgment with respect to that note. But Amos did refer in the notice of appeal to the district court's summary judgment order on his defenses and counterclaim and the court's order on the FDIC's motions in limine. Those orders are the only ones that Amos is challenging, so his notice of appeal was not deficient and we have jurisdiction to consider all of the claims he raises. See Fed. R. App. P. 3(c)(1)(B) (providing that a notice of appeal must "designate the judgment, order, or part thereof being appealed").

5

as to any material fact and the moving party is entitled to a judgment as a matter of law." D'Angelo v. ConAgra Foods, Inc., 422 F.3d 1220, 1225 (11th Cir. 2005) (quotation marks omitted).

The D'Oench doctrine holds that "in a suit against the maker of a note by a federal deposit insurer, the maker is not allowed to raise a secret agreement between the maker and the payee bank as a defense." Bufman Org. v. FDIC, 82 F.3d 1020, 1023 (11th Cir. 1996). In layman's terms, that means a borrower sued by the FDIC can rely only on terms that appear on the face of the borrower's note. Any defense based on a "secret agreement" — that is, based on something not appearing on the face of the note — is barred by the D'Oench doctrine.

For example, in Langley v. FDIC, 484 U.S. 86, 108 S. Ct. 396 (1987), the FDIC was the plaintiff in a lawsuit against two borrowers who had defaulted on a note used to purchase some land. Id. at 88–90, 108 S. Ct. at 399–400. "[T]he essence of [the borrowers'] defense against the note [was] that the bank made certain warranties regarding the land, the truthfulness of which was a condition to performance of their obligation to repay the loan." Id. at 90–91, 108 S. Ct. at 401. The borrowers contended that because the lending bank's representations about the land turned out to be false, they were released from their obligation. Id. at 88–91, 108 S. Ct. at 400–01. The Supreme Court disagreed, holding that the purported "condition" — that the bank made warranties and they were truthful — was not

6

apparent on the face of the note itself, so the D'Oench doctrine barred the borrowers' defense.  See id. at 93, 96, 108 S. Ct. at 402–03.

The D'Oench doctrine has been codified at 12 U.S.C. § 1823(e).  That subsection provides that:

> No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement —
>
>> (A) is in writing,
>>
>> (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
>>
>> (C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
>>
>> (D) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e)(1).

As an initial matter, we reject Amos' contention that the FDIC did not invoke the D'Oench common law doctrine because it cited only § 1823(e), not the D'Oench decision, in its answer to Amos' counterclaim.  As we have explained, "[t]he purposes of the statute and the common law rule [i.e. the D'Oench doctrine] are the same, and this [C]ourt employs the same analysis under each."  Bufman, 82

F.3d at 1024.  There was no need for the FDIC to plead the common law D'Oench doctrine in addition to the codification of the doctrine in § 1823(e).

Amos also contends that the wrongful acts that excuse him from repayment — Wright and GulfSouth's allegedly fraudulent scheme — are outside the scope of the term "agreement" in § 1823(e).  At bottom, he is arguing that repayment of the Amos note and the guaranty was conditioned on Wright and GulfSouth having truthfully represented the loans' financial context and what purpose the loans would serve.  But that "condition" for repayment does not appear anywhere on the face of the Amos note or the guaranty.  Just as the borrowers' defense that repayment was conditioned on truthful representations about the land was barred in the Langley case, Amos' defenses premised on Wright and GulfSouth's representations are barred in this case.  See Langley, 484 U.S. at 90–91, 96, 108 S. Ct. at 401, 403 ("A condition to payment of a note . . . is part of the 'agreement' to which the writing, approval, and filing requirements of 12 U.S.C. § 1823(e) attach.").

Amos next contends that "irregularities" in GulfSouth's bank records did or should have put the FDIC on notice that the notes and the guaranty were the product of fraud.  That contention fares no better than his other ones.  The FDIC's knowledge, or lack of it, is irrelevant to the D'Oench inquiry.  See id. at 95, 108 S. Ct. at 403 ("An agreement that meets [the § 1823(e) requirements] prevails even if

the FDIC did not know of it; and an agreement that does not meet them fails even if the FDIC knew."). It does not matter whether a bank inspector could have deduced, based on GulfSouth's records, that Amos was fraudulently induced into executing the Amos note and the guaranty. What matters is that no writing that meets § 1823(e)'s requirements excuses Amos from repayment. See id.

In dicta in its Langley decision, the Supreme Court suggested that a defense that "render[ed] the instrument entirely void," such as "fraud in the factum," would not be subject to the D'Oench doctrine. Id. at 93, 108 S. Ct. at 402. Amos contends that, under that dicta, two defenses he raised in the district court — fraud in the factum and lack of actual authority — avoid the D'Oench bar. But even if the D'Oench doctrine does not apply to those defenses, an issue we do not reach, his contention still fails.

The Supreme Court of Florida defined fraud in the factum as "[f]raud occurring when a legal instrument as actually executed differs from the one intended for execution by the person who executes it, or when the instrument may have had no legal existence." Browning v. Fla. Hometown Democracy, Inc., PAC, 29 So. 3d 1053, 1061 n.4 (Fla. 2010) (quoting Fraud in the Factum, Black's Law Dictionary (9th ed. 2009)). An example of that kind of fraud was involved in Cancanon v. Smith Barney, Harris, Upham & Co., 805 F.2d 998 (11th Cir. 1986). There we held the plaintiffs' allegations that the defendant told them they were

9

opening a <u>money market account</u> but actually had them sign a contract for a <u>securities account</u> amounted to fraud in the factum. <u>See</u> <u>id.</u> at 999–1001.

Amos asserts that because certain terms, such as the principal amount, were left blank on the guaranty, and because Wright misrepresented what Innovation would do with the proceeds of the Innovation note, the guaranty was the product of fraud in the factum. But Amos testified that he was familiar with guaranties in general and that he knew he was signing a guaranty of a loan from GulfSouth to Innovation. And the guaranty included the most important term: the loan number of the Innovation note that was being guaranteed. That is a far cry from the deception that constituted fraud in the factum in <u>Cancanon</u>. Summary judgment against Amos was appropriate on his fraud in the factum defense.

Amos also argues that the Innovation note was void because Wright lacked actual authority to execute it. At the time the note was executed, Florida law provided that in a "manager-managed company" a "member is not an agent of the limited liability company for the purpose of its business solely by reason of being a member." Fla. Stat. § 608.4235(2)(a) (repealed 2015). Amos asserts that because Innovation was a manager-managed company, Wright did not have authority to execute the Innovation note, making it void.[4] The problem with that assertion is

---

[4] We assume for the purposes of this argument that (1) a lack of actual authority renders a contract void under Florida law; (2) if the Innovation note was void, that would also render the Amos note and the guaranty void; and (3) an instrument that is void for lack of actual authority is

10

that Innovation's operating agreement expressly names Wright as the manager of the company.[5]  And the agreement gives the manager — that is, Wright — the authority to "sign and deliver all contracts . . . and instruments which are necessary, appropriate or convenient for . . . the furtherance of [Innovation's] purposes."  Because the record shows that Wright had authority to execute the Innovation note, there was no genuine issue of material fact as to whether the note was void for lack of actual authority.  As a result, summary judgment was appropriate regardless of whether the D'Oench doctrine barred this defense. See D'Angelo, 422 F.3d at 1225.

### III. THE FAIR MARKET VALUE EVIDENCE

Amos also contends that the district court abused its discretion in granting the FDIC's motions in limine and excluding from the trials evidence of the Bayou Drive property's fair market value.  "A district court's ruling on the admissibility of evidence is reviewed for abuse of discretion."  United States v. Masferrer, 514 F.3d 1158, 1162 (11th Cir. 2008).

---

not subject to the § 1823(e) requirements.  We do not imply a view either way on any of those issues.

[5] As a technical matter, the operating agreement gives Wright the option of serving as manager either "individually" or "through a Florida limited liability company."  No evidence in the record indicates that he chose to act as manager through another entity, and he signed the Innovation note as Innovation's "managing member."

11

The district court denied an out-of-time motion to designate an appraiser as an expert on the property's fair market value, concluding that there was no good cause to modify the scheduling order after the time for designating an expert had expired.  Amos does not challenge that conclusion.  He has therefore abandoned any argument that the district court should have allowed him to present expert testimony about the property's fair market value.  See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 683 (11th Cir. 2014).

After the district court ruled out the presentation of expert testimony, the FDIC moved in limine to prohibit Amos from personally testifying as to the property's fair market value.  In his response to that motion Amos argued that he could provide lay testimony about fair market value.  He acknowledged that at his deposition he had admitted that he did not live in Destin or "know the market."  But he pointed out that five years had passed since that deposition and asserted that:

> Since [the deposition], Amos became manager of [Innovation], sold the [p]roperty to a third party . . . and wound-down the company. Contrary to [the FDIC's] argument, this is an indication that Amos may be sufficiently familiar with the [p]roperty at issue, as well as its value on the date of [the] short sale.  [The FDIC's] argument ignores the possibility that Amos has had the time, inclination and provocation to understand the market property values, including at the time of the short sale . . . .

12

(Citation and quotation marks omitted).  Amos submitted no evidence, such as an affidavit, that there was more than a "possibility" that he was "sufficiently familiar with the [p]roperty."

The district court concluded that even if a landowner's testimony about fair market value is ordinarily admissible, Amos had provided "no factual basis" that he "is sufficiently qualified . . . with sufficient knowledge or experience regarding th[e] property to testify as to its value on the date of the short sale."  The ruling preventing Amos from providing lay testimony on the issue was entirely reasonable.

**AFFIRMED.**