Sydney S. PETTYJOHN and Walker Pettyjohn, III, Individually and Sidney S. Pettyjohn as personal representatives of the estate of Steven Kemp Pettyjohn, deceased, Plaintiffs,

v.

MISSION–ST. JOSEPH'S HEALTH SYSTEM, INC.; and St. Joseph's Hospital, Defendants.

No. 1:99CV171–C.

United States District Court, W.D. North Carolina, Asheville Division.

Jan. 5, 2001.

---

Joel B. Stevenson, Swain, Stevenson & Moore, Asheville, NC, Bryant Welch, Sarah O. Rollman, Bryant Welch, J.D., Ph.D. & Associates, Potomac, MD, for plaintiffs.

James W. Williams, Roberts & Stevens, P.A., Asheville, NC, for defendants.

## ORDER

COGBURN, United States Magistrate Judge.

█ **THIS MATTER** is before the court upon plaintiffs' Motion to Alter or Amend Judgment. A motion made in accordance with Rule 59(e), Federal Rules of Civil Procedure, may be granted to (1) accommodate an intervening change in law, (2) account for new evidence not available at trial, (3) correct clear errors of law, or (4) prevent manifest injustice. *EEOC v. Lockheed Martin Corp.*, 116 F.3d 110, 112 (4th Cir.1997). Plaintiffs have failed to show that any of those grounds exist. Instead, they argue that summary judgment was granted because the court erroneously believed plaintiffs were advancing medical malpractice arguments, when they were, supposedly, advancing fraud arguments. Reconsideration of a previous order is not warranted where, as here, parties simply ask the court to change its mind. *United States v. Williams*, 674 F.2d 310, 313 (4th Cir.1982). Plaintiffs appear to argue that the court committed a clear error of law or that the decision would result in a manifest injustice.

█ Review of the Memorandum of Decision and Judgment reveals that the proposed "clear error of law" that plaintiffs perceive, as they did in the extensive briefing of the Motion for Summary Judgment, is this court's refusal to depart from the clear and binding decisions of the Court of Appeals of the Fourth Circuit in favor of decisions from other circuits which are more favorable to plaintiffs' position. This court simply cannot ignore the well-settled and binding law of this circuit.

As to plaintiffs' latter-day theory of fraud, it is asserted for the first time after judgment. Indeed, absolutely nothing in the record before the court would support plaintiffs' new theory that defendant hospital somehow cooked its records to reflect that plaintiffs' decedent was stable. Allegations of fraud are most serious under the Federal Rules of Civil Procedure, *see* Fed.R.Civ.P. 9(b), and neither plaintiffs' pleadings nor the arguments and evidentiary material submitted

provide a basis for a fraud claim to even survive Rule 12 muster. As to theories of the case actually pleaded and argued, this court has fully considered plaintiffs' claims. This court did, however, address plaintiffs' argument that their decedent's file was "rubber-stamped:"

Turning from the macro issues to the micro, the court's present concern is with the services rendered to Mr. Pettyjohn. Review of plaintiffs' own evidence is antithetical to an argument that his records were "rubber-stamped" or, for that matter, services were denied based on inability to pay. Mr. Pettyjohn's mother, in a contemporaneous, handwritten document, recorded what appears to this court to be an extraordinary effort on the part of defendants and Dr. Counts. Even though Dr. Counts determined that Mr. Pettyjohn did not present a danger to himself or others and, therefore, did not satisfy the requirements for impatient care; and even though, according to plaintiffs, Dr. Counts knew that Mr. Pettyjohn had no insurance, Dr. Counts volunteered that if either Mr. Pettyjohn or his mother desired, she would authorize his admission to the hospital. A hospital that had a policy of creating fictitious diagnoses to avoid EMTALA simply would not be so compassionate. In the end, a hospital that would compromise the integrity of their records would, as the *Fisher* court found, do so at great legal and subsequent financial peril.

Finally, the court has considered briefs which were filed after the hearing, i.e., plaintiffs' reply to the response to the sur-reply and defendants' sur-reply to that reply. At issue is language in *Baber* which leads plaintiffs to believe that the Court of Appeals for the Fourth Circuit has opened the door for expert opinion on whether a hospital in fact detected an emergency medical condition.

\* \* \* \* \* \*

Any inference which is raised in *Baber* is soundly dismissed four years later, when the Court of Appeals for the Fourth Circuit held in *Vickers, supra:*

This line of argument, however, ignores the distinction between the initial screening examination, the focus of EMTALA, and the correctness of the treatment that follows from the screening. EMTALA requires a screening examination "to determine whether or not an emergency medical condition . . . exists." . . . . But the accuracy of the diagnosis is a question for state malpractice law, not EMTALA; the Act "does not impose any duty on a hospital requiring that the screening result in a correct diagnosis." Instead, "questions related to . . . diagnosis remain the exclusive province of local negligence and malpractice law."

Appellant simply ignores this basic principle. Instead, he assumes that Dr. Hughes should have diagnosed Vickers differently (and in hindsight perhaps more accurately) as suffering the sort of severe head injury that requires testing for intracranial damage. He then asserts the obvious proposition that this diagnosis would have prompted different treatment than Vickers in fact received. But if disparate treatments based on disparate diagnoses sufficed to raise a claim under EMTALA, every allegation of misdiagnosis could automatically be recast as a claim under the Act: An improperly diagnosed patient can always assert that a properly diagnosed patient would have received a different course of treatment. Such an outcome would plainly subvert Congress' intent that EMTALA remain distinct from state malpractice law.

The flaw in this reasoning is its failure to take the actual diagnosis as a given. EMTALA is implicated only when individuals who are perceived to have the same medical condition receive disparate treatment; it is not implicated whenever individuals who turn out in fact to have had the same condition receive disparate treatment. The Act would otherwise become indistinguishable from state malpractice law. As a result, when an exercise in medical judgment produces a given diagnosis, the decision to prescribe a treatment responding to the diagnosis cannot form the basis of an EMTALA claim of inap-

propriate screening. In fact, not only does treatment based on diagnostic medical judgment not violate the Act, it is precisely what EMTALA hoped to achieve—handling of patients according to an assessment of their medical needs, without regard to extraneous considerations such as their ability to pay.

*Id.,* at 143–44 (citations omitted; emphasis added). The competent evidence of record is undisputed that, at the relevant time, *defendants* perceived that Mr. Pettyjohn was not suffering from an emergency medical condition.

To allow expert testimony to second-guess the conclusions of hospital staff or to show that the same doctors could have come up with a different diagnosis that an emergency medical condition then existed would be contrary to well-settled Fourth Circuit precedent, which this court is bound to follow. EMTALA is invoked only where "individuals who are perceived to have the same medical condition receive disparate treatment," *id.,* and "perception" is, perhaps, the most subjective commodity of human senses.

Memorandum of Decision, at 4–12. What plaintiffs now suggest is that while they must take the diagnosis, they can challenge the conclusion for credibility. Motion to Amend, at 3. Rule 59e clearly is not intended as an avenue for asserting new (and novel) legal theories. *See FDIC v. World Univ. Inc.,* 978 F.2d 10, 16 (1st Cir.1992). Even if plaintiffs had been arguing fraud from the outset (which the pleadings belie), their burden would have been to allege and show the essential elements:

The essential elements of actionable fraud are as follows: (1) material misrepresentation of a past or existing fact; (2) the representation must be definite and specific; (3) made with knowledge of its falsity or in culpable ignorance of its truth; (4) that the misrepresentation was made with intention that it should be acted upon; (5) that the recipient of the misrepresentation reasonably relied upon it and acted upon it; and (6) that resulted in damage to the injured party.

*Hudson–Cole Development Corp. v. Beemer,* 132 N.C.App. 341, 346, 511 S.E.2d 309 (1999). Plaintiffs' evidence of fraud, at best, is speculative, and as the court earlier found, the hospital simply would have no motive to compromise the integrity of their records. Plaintiffs argue that such a motive would be profits; however, their own evidence indicates that the medical and mental-health professionals who saw plaintiffs' decedent went to incredible lengths for him and even volunteered to admit him if he or his mother so desired. This court is charged with drawing all reasonable inferences in favor of a party resisting summary judgment. In determining what are reasonable inferences, courts must by necessity determine what are unreasonable inferences. Even if fraud had been alleged, plaintiffs' suggested inference is unreasonable in light of the evidence presented and the absence of a rational motive for defendants to have engaged in the purported misconduct, of which there is no evidence. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 595, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court finds that plaintiffs' post-game attempt to assert a new cause of action is inappropriate under Rule 59(e), and that even if such approach were permitted, plaintiffs presented no evidence that would have allowed such claim to proceed past summary judgment. Plaintiffs' Motion to Alter or Amend Judgment, therefore, will be denied.

## ORDER

**IT IS, THEREFORE, ORDERED** that plaintiffs' Motion to Alter or Amend Judgment is **DENIED.**

This Order is entered in response to plaintiffs' Motion to Alter or Amend Judgment (# 44).