NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0205n.06

Nos. 25-5786/5894

FILED
May 05, 2026
KELLY L. STEPHENS, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ROSE GRIFFIN,

      Plaintiff-Appellee,

v.

COPPER CELLAR CORPORATION,

      Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF
TENNESSEE

OPINION

Before: BOGGS, BATCHELDER, and MOORE, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Rose Griffin sued her employer, Copper

Cellar Corporation, bringing hostile-work-environment and retaliation claims under Title VII. A

jury found in Griffin's favor on the former but not the latter claim. It then awarded Griffin $179,000

in compensatory damages and $314.22 in back pay. The district court later approved $480,364.50

in attorney fees. On appeal, Copper Cellar does not challenge its liability under Title VII. It instead

attacks (1) the lawfulness of the jury's back pay award, (2) the validity of the jury's compensatory

damages award, and (3) the reasonableness of Griffin's attorney fees. We AFFIRM.

**I. BACKGROUND**

Copper Cellar, which owns and operates more than twenty restaurants in Eastern

Tennessee, hired Griffin in May 2017 as a prep cook at its Corner 16 restaurant in Knoxville. R. 193

(Final Pretrial Order ¶¶ 3–4) (Page ID #2708–10). In 2018, Griffin and several other employees

transferred to a new Copper Cellar restaurant called Chesapeake's, where she worked as a line cook. *Id.* ¶¶ 6–7 (Page ID #2710).

While Griffin worked at Chesapeake's, a coworker "spit [his] dip packet in [her] face," repeatedly "grabbed [her] breasts," arranged ingredients at her work station to resemble "a man's penis . . . with semen coming out of it," "nudge[d] [her] in the back every time he passed by [her]," told her "I want to fuck you," "pushed [her] down on the salad station . . . and started . . . rubbing up on [her] and thrusting," and "unzip[ped] his pants, st[uck] his hands in his pants with corn starch and start[ed] massaging [him]self" in front of Griffin. R. 222 (Tr. Vol. 1 at 20–27) (Page ID #4302–09).

This harassment, and Copper Cellar's failure to restrain it when Griffin repeatedly complained, affected Griffin. When her supervisor told her that she "needed to keep [her] head down and [her] mouth shut," she was "upset" and "crying." *Id.* at 47 (Page ID #4329). When managers "laugh[ed] about" sexual harassment, Griffin "felt sick," "felt like puking," and "felt like [she] had no say on who touches [her] body." *Id.* at 48 (Page ID #4330). The experience left her feeling "violated" and "belittled." *Id.* at 49 (Page ID #4331). About 18 months after she left Chesapeake's, Griffin contemplated suicide and went so far as to take her gun and "dr[i]ve [her] car down into the woods" with the plan of "shoot[ing] [her]self in the head." *Id.* at 57 (Page ID #4339). At the damages phase of trial, Griffin testified that she had "nightmares that [her harasser] would find" her, that it was "[h]ard to sleep at night," and that she was "not eating as much as [she] used to." R. 254 (Tr. Vol. 4 at 79) (Page ID #5453). Discussing the "humiliat[ion]" she faced, Griffin said that she didn't "even know how to describe the pain," which "ma[de] her want to throw up [when she thought] about it." *Id.* at 80 (Page ID #5454). She almost attempted suicide, she said,

because she "wanted to stop dreaming" about the harassment. *Id.* at 81 (Page ID #5455). The stress that she developed from the harassment, Griffin testified, would cause her chest to "start tightening up" and would trigger "muscle spasms." *Id.* at 83 (Page ID #5457).

At the trial's liability phase, the jury found in Griffin's favor on her hostile-work-environment claim, but not on her retaliation claim. R. 201 (Phase 1 Verdict at 1) (Page ID #2743). At the damages phase, the court instructed the jury to consider two "elements of actual damages and no others." R. 255 (Tr. Vol. 5 at 28–29) (Page ID #5518–19). It first asked the jury to consider "the amount of back pay and benefits [Griffin] would have earned in her employment with defendant from April 6, 2019, to the date she rejected defendant's offer of reinstatement five weeks later." *Id.* at 29 (Page ID #5519). It next told the jury to award compensatory damages based on the evidence of Griffin's "pain, suffering, inconvenience, emotional distress or mental anguish, embarrassment, humiliation, loss of enjoyment of life, and other noneconomic losses." *Id.* The jury unanimously awarded Griffin $314.22 in back pay and $179,000 in compensatory damages. R. 206 (Phase 2 Verdict) (Page ID #2751).

Copper Cellar filed a motion under Federal Rule of Civil Procedure 59(e) to alter or amend the judgment, arguing (1) that Griffin's "back pay damages should be vacated . . . because the jury found in favor of Copper Cellar on her retaliation claim," and (2) that the compensatory damage award "should be reduced to a nominal amount because it manifests a clear error of law and fact based on the evidence introduced and admitted at trial." R. 217 (R. 59 Mot. at 1) (Page ID #2935). The district court denied the motion, and Copper Cellar appealed. R. 234 (R. 59 Mem. Op.) (Page ID #4577–83); R. 241 (Notice of Appeal) (Page ID #4674–75). Separately, Griffin sought over $800,000 in attorney fees, an award that included a proposed 50% multiplier. R. 210 (Fees Mot. at

3

7) (Page ID #2765); R. 237 (R&R at 4) (Page ID #4617). After reducing the requested rate, declining to apply a multiplier, and slightly reducing the number of reasonable hours expended, a magistrate judge recommended an award of $480,364.50. *Id.* at 32 (Page ID #4645). The district court adopted the recommendation over Copper Cellar's objections, and Copper Cellar again appealed. R. 246 (Fees Mem. Op. at 6) (Page ID #4703); R. 247 (Notice of Appeal) (Page ID #4713–14). We consolidated the two appeals. D. 18 (Consolidation Order).

## II. RULE 59(e) MOTION

### A. Standard of Review

Federal Rule of Civil Procedure 59(e) provides for motions to "alter or amend a judgment." A successful Rule 59(e) motion must identify "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 474 (6th Cir. 2009) (quoting *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 496 (6th Cir. 2006)). We review the denial of a Rule 59(e) motion for abuse of discretion, which occurs when we are left with "a definite and firm conviction that the trial court committed a clear error of judgment." *Id.* at 467 (quoting *Tompkin v. Philip Morris USA, Inc.*, 362 F.3d 882, 891 (6th Cir. 2004)).

### B. Analysis

#### 1. Untimeliness Under Rule 59(e)

We begin by identifying some procedural difficulties that arise from Copper Cellar's use of a post-trial Rule 59(e) motion to raise its arguments. Such motions generally "should not [be] use[d] . . . to raise arguments which could, and should, have been made before judgment issued." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (quoting

*FDIC v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir. 1992)). A district court, therefore, may deny a Rule 59(e) motion on the ground that "the arguments were . . . untimely raised," and we will affirm such a denial where the appellant in fact "raised [its Rule 59(e) argument] tardily." *Id.*

This principle would ordinarily bar Copper Cellar from making the bulk of its Rule 59(e) arguments. On appeal, Copper Cellar argues that the district court incorrectly decided two issues raised by the Rule 59(e) motion: (1) whether the jury could award Griffin back pay, and (2) whether the jury's award of compensatory damages was sufficiently supported by the evidence at trial. As for back pay, Copper Cellar bypassed multiple opportunities, prior to judgment, to argue that the jury's defense verdict on Griffin's retaliation claim meant back pay could not be awarded. Rather than doing so before judgment, Copper Cellar acquiesced to a damages-phase verdict form and jury instructions that included back pay and, in its closing arguments, suggested that the jury might "find th[at] back wages are appropriate," but that such damages should be limited to $314.22. R. 255 (Tr. Vol. 5 at 15–16, 24, 32–33) (Page ID #5505–06, 5514, 5522–23). That is, of course, the amount that the jury ultimately awarded. Similarly, to the extent that Copper Cellar used its Rule 59(e) motion to argue that the evidence was insufficient to support an award of more-than-nominal compensatory damages, it could have raised that argument before the verdict through a motion under Rule 50. *See* Fed. R. Civ. P. 50(a).[1]

This case, however, differs from *Sault Ste. Marie*, in which the district court "denied the [Rule 59(e)] motion" on the ground that its arguments were "untimely raised." 146 F.3d at 374. Here, by contrast, the district court did not invoke any timeliness principles in denying Copper

---

[1] To the extent that Copper Cellar is instead suggesting that trial court should have reduced the damages award to some lesser amount, it could not have raised that argument prior to knowing the jury's ultimate damages award.

Cellar's motion. Nor did Griffin clearly invoke this Rule 59(e) principle in opposing Copper Cellar's motion. Though she did note that the back pay award was Copper Cellar's "own suggestion," and that the nominal damages argument was raised "for the first time in this litigation," those comments were made in the context of her merits argument and did not expressly invoke timeliness as a reason for denying Copper Cellar's motion. R. 221 (Opp. to R. 59(e) Mot. at 11–12) (Page ID #4271–72). Furthermore, even if Griffin did argue timeliness under Rule 59(e) below, she adopts the district court's reasoning in urging us to affirm. *See* D. 28 (Appellee Br. at 31, 46).

Although we would ordinarily apply Rule 59(e)'s bar on arguments that could have been raised before judgment, these circumstances muddy the waters for several reasons. First, courts generally must "follow the principle of party presentation, which means that we 'rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.'" *In re Chrysler Pacifica Fire Recall Prod. Liab. Litig.*, 143 F.4th 718, 725 (6th Cir. 2025) (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)) (holding that district court erred by applying waiver defense sua sponte). Here, the parties have not teed up the Rule 59(e) timeliness issue for decision. Second, we have held, though not in these exact circumstances, that a party's failure to raise a procedural objection under Rule 59(e) before a district court forfeits any objection before this court. *Nat'l Ecological Found. v. Alexander*, 496 F.3d 466, 476 (6th Cir. 2007). Third, in the context of waiver, we generally hesitate to find waiver where the court below "fully addressed" an issue and "both parties fully briefed the issue before this court." *Lexicon, Inc. v. Safeco Ins. Co. of Am.*, 436 F.3d 662, 670 n.6 (6th Cir. 2006). Here, the district court and the appellate briefs both grapple with Copper Cellar's Rule 59(e) arguments on the merits.

This case presents, on the one hand, a relatively clear violation of Rule 59(e)'s timeliness requirement and, on the other, a failure by Griffin or the district court to raise or address the issue. We need not, however, decide which of these competing principles prevails. Because, as detailed below, Copper Cellar's Rule 59(e) arguments fail on the merits, we defer resolution of this procedural question for another day.

**2. Back Pay**

Griffin's case comprised both a Title VII hostile-work-environment claim and a Title VII retaliation claim. As for the retaliation claim, the parties disputed whether a manager terminated Griffin by telling her "I don't need you anymore," or whether Griffin "simply . . . walked out the door" of her own accord. *See* R. 254 (Tr. Vol. 4 at 13, 24) (Page ID #5387, 5398). The jury determined that Copper Cellar had not terminated Griffin in retaliation for her Title VII protected activity, delivering a verdict in the company's favor on Griffin's retaliation claim. Copper Cellar argued in its Rule 59(e) motion that this finding at the liability phase should have precluded any award of back pay at the damages phase. The district court rejected that argument, which Copper Cellar renews before this court.

Because our caselaw does not establish that an award of back pay is never an appropriate remedy for a hostile-work-environment claim (as opposed to one alleging discriminatory or retaliatory discharge), we find neither a clear error of law in the jury's award nor an abuse of discretion by the district court. Our cases establish that "successful Title VII plaintiffs are presumptively entitled to back pay" sufficient "to make them whole." *Pittington v. Great Smoky Mountain Lumberjack Feud, LLC*, 880 F.3d 791, 799 (6th Cir. 2018). In deciding on an award of back pay, a jury considers "what the claimant would have received but for [the] discrimination."

7

*Id.* (quoting *Rasimas v. Mich. Dep't of Mental Health*, 714 F.2d 614, 628 (6th Cir. 1983)). We have, moreover, recently upheld awards of back pay on hostile-work-environment claims in cases that, like this one, lacked an express jury finding of discriminatory or retaliatory dismissal. *See Schlosser v. VRHabilis, LLC*, 113 F.4th 674, 682 (6th Cir. 2024); *Corbin v. Steak 'n Shake, Inc.*, 861 F. App'x 639, 641 (6th Cir. 2021). To be sure, an award of back pay typically flows from a jury's finding of discriminatory, retaliatory, or constructive discharge. *See, e.g.*, *Pittington*, 880 F.3d at 798 (retaliation); *Suggs v. ServiceMaster Educ. Food Mgmt.*, 72 F.3d 1228, 1232–34 (6th Cir. 1996) (discriminatory discharge); *Henry v. Lennox Indus., Inc.*, 768 F.2d 746, 751–53 (6th Cir. 1985) (constructive discharge). But we have never held that such a verdict is *required* as a foundation for an award of back pay. Here, the district court determined that the evidence introduced was sufficient for the jury to find Copper Cellar's Title VII violations "responsible for [Griffin] leaving her employment," R. 234 (R. 59 Mem. Op. at 5) (Page ID #4581), and, therefore, that the award of back pay reflected "what [Griffin] would have received but for" the hostile work environment. *Pittington*, 880 F.3d at 799. Such an award would not, under our existing precedent, constitute a clear error of law, and thus the district court did not abuse its discretion.

Copper Cellar contends otherwise by looking to *Betts*, a state-law decision that cannot bear the weight the company places on it. In *Betts*, the district court vacated an award of back pay after plaintiffs prevailed on a Michigan-law hostile-work-environment claim but did not prevail on their discriminatory-discharge claim. 558 F.3d at 474–75. We held that the district court "did not abuse its discretion in granting Costco's motion to amend the judgment with respect to these claims" because other courts "ha[d] adopted a similar analysis regarding the nonavailability of lost wages as damages in the context of a meritorious hostile-work-environment claim without a finding of

wrongful termination." *Id.* at 475. We did not ourselves, however, adopt those other courts' conclusions. *See id.* Therefore, *Betts* cannot on its own demonstrate that clear error or an abuse of discretion occurred here.

### 2. Compensatory Damages

Proceeding to take on the jury's compensatory-damages award, Copper Cellar argues (1) that there was insufficient evidence to sustain anything more than a nominal compensatory damages award, and (2) that the award was not proportional to Griffin's injury.[2] We address these contentions in turn.

Copper Cellar's first argument relies largely on our decisions in *Betts* and *Erebia v. Chrysler Plastic Products Corp.*, 772 F.2d 1250 (6th Cir. 1985). In *Erebia*, we held that a hostile-work-environment plaintiff's testimony that ethnic slurs left him "highly upset" and that "you can only take so much" was insufficient to permit compensatory emotional-distress damages. 772 F.2d at 1259. *Betts*, which considered claims arising under Michigan anti-discrimination law, involved two plaintiffs. The first did not introduce evidence sufficient to demonstrate emotional-distress damages because her claims of distress stemmed from her "nondiscriminatory discharge" and not "Costco's hostile work environment." 558 F.3d at 472. The second plaintiff's testimony, on the

---

[2]Apart from the question, noted above, of Copper Cellar's failure to raise this issue before judgment, it is far from clear that a motion under Rule 59(e) is the proper vehicle by which to raise either of these arguments. In *Betts*, for instance, the company raised an argument similar to Copper Cellar's first—which is essentially a sufficiency-of-the-evidence challenge—via a motion for judgment as a matter of law. 557 F.3d at 471. Copper Cellar's second argument, that the damages are not proportional to the harm, sounds more in terms of remittitur. Remittitur, however, involves the conditional grant of a new trial, and not the alteration or amendment of a judgment. *See Smith v. John Swafford Furniture Co.*, 614 F.2d 552, 553 (6th Cir. 1980) ("It has long been the rule that a federal district court has the power to condition the denial of a motion for a new trial upon consent to a remittitur."). Neither Griffin nor the district court, however, appears to have taken issue with Copper Cellar's unusual procedural steps. Because Copper Cellar's efforts to vacate or reduce the compensatory damages award fail on the merits, we too set aside our doubts and assume that its motion was procedurally appropriate.

other hand, failed under *Erebia*'s application of Michigan law because it involved only the claim that she was "upset" and "felt something wasn't right." *Id.*

Because Griffin easily clears the bar set by *Erebia* and *Betts*, the district court did not abuse its discretion in declining to reduce her compensatory damages to a nominal amount. *Cf. Corbin*, 861 F. App'x at 647 (upholding *punitive* damages awarded to restaurant employee who "was slapped, touched, and subjected to derogatory comments at work"). Griffin's testimony at trial went far beyond generic statements about being upset by her treatment at Copper Cellar. It included (1) statements that she was "humiliated" and rendered "helpless" by the harassment; (2) that she suffered from nightmares, struggled to sleep, and lost her appetite; (3) that she was "crying" and "in a depressive state" for months after leaving Chesapeake's; (4) that in one instance, management's cavalier attitude towards the harassment made her feel "like puking"; and (5) that she contemplated (and nearly attempted) suicide as a result of her harassment. R. 222 (Tr. Vol. 1 at 28, 48, 57) (Page ID #4310, 4330, 4339); R. 254 (Tr. Vol. 4 at 78–80) (Page ID #5452–54). Further distancing this case from *Erebia* or *Betts* is the fact that Griffin was subjected to physical harassment, not just verbal abuse. R. 222 (Tr. Vol. 1 at 22–26) (Page ID #4304–08). All told, a jury considering and crediting Griffin's testimony could reasonably find that Copper Cellar's hostile work environment caused her substantially more than nominal harm.

Nor did the district court abuse its discretion in refusing to remit the jury's compensatory damages award. To be sure, we have recognized that "[a]n award of compensatory damages 'must be proportional to the injury.'" D. 26 (Appellant Br. at 43) (quoting *Moore v. Kuka Welding Sys.*, 171 F.3d 1073, 1082 (6th Cir. 1999)). But here, as in *Kuka*, "[w]e cannot say that the $[179,000] award by the jury for compensatory damages is excessive when balanced against the harassment

and isolation suffered by plaintiff over time." 171 F.3d at 1082. As we have described, the evidence showed that Griffin "put up with a fairly steady stream" of both verbal and physical sexual harassment "during [her] employment" at Chesapeake's. *Id.* Copper Cellar insists that "[t]he evidence . . . does not suggest that [Griffin] was particularly sensitive emotionally." D. 26 (Appellant Br. at 44). Though we are not convinced that only a "particularly sensitive" plaintiff would suffer harm from the treatment Griffin described, her exact degree of sensitivity is beside the point where, as here, the record is not "devoid of any evidence of intangible emotional loss to justify a large non-economic award." *Matus v. Lorain Cnty. Gen. Health Dist.*, 707 F. App'x 304, 315 (6th Cir. 2017). "The jury heard testimony . . . about the substantial negative physical and emotional effects [Griffin] suffered," and "the district court did not abuse its discretion in rejecting the argument that the jury's award was" out of proportion to her suffering. *Id.* Copper Cellar has not pointed to a single case in which we have reduced a jury's Title VII compensatory damages award on appeal, and we decline its invitation to do so here.

### III. ATTORNEY FEES

**A. Standard of Review**

"In any action or proceeding under" Title VII, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney[] fee." 42 U.S.C. § 2000e-5(k). "The starting point for determining a reasonable fee is the lodestar, which is the product of the number of hours billed and a reasonable hourly rate." *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 616 (6th Cir. 2007). We "review[] a district court's award of attorney[] fees . . . for abuse of discretion," and give "substantial deference" to "[t]he district court's calculation of the lodestar value, as well as any

justifiable upward or downward departures." *Id.* This deference recognizes that the district court stands in a far better position than we are to assess the reasonableness of the attorneys' efforts.

## B. Analysis

Below, Copper Cellar raised several arguments in opposition to Griffin's motion for fees. Before us, it focuses only on the fact that Griffin's attorneys continued to litigate this case after the company offered to reinstate her and, eventually, to settle for $25,000. D. 26 (Appellant Br. at 47–54); R. 214-1 (Carrasco Decl., Ex. 5) (Page ID #2888). This sole argument finds no purchase in the law. It is true that "a spurned [settlement] offer might warrant a reduc[ed]" fee award, because "[f]ew, if any, reasonable litigants would call a monetary judgment that comes in well under the money offered to settle the case a success." *McKelvey v. Sec'y of U.S. Army*, 768 F.3d 491, 495 (6th Cir. 2014). The problem for Copper Cellar here is that the $179,000 in damages Griffin received was not "well under the money offered." *Id.* Quite to the contrary, Griffin's attorneys convinced a jury to award more than seven times what Copper Cellar was willing to settle for. Therefore, even ignoring that "a rejected settlement offer" is only one among the "broad constellation of factors a trial court may consider" in awarding fees, this is not a case in which "'a less favorable recovery after trial'" could justify a reduced fee award. *Id.* (quoting *Sheppard v. Riverview Nursing Ctr., Inc.*, 88 F.3d 1332, 1337 (4th Cir. 1996)).

The magistrate judge thoroughly considered each of Copper Cellar's objections, reducing counsel's requested billing rate, refusing to apply a multiplier, and reducing the hours billed. R. 237 (R&R at 15–27) (Page ID #4628–40). It was under no obligation to reduce the award further because Griffin had rejected the company's pre-trial offers of reinstatement and settlement. The district court did not, therefore, abuse its discretion in adopting the recommended fee award.

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM.